THE BOROUGH OF SPRING LAKE

*v.*

KARL T. POLAK et al.

[Submitted June 25th, 1909.   Decided July 17th, 1909.]

1. Evidence *held* to show a dedication to public use of certain property marked on a plat.

2. Evidence *held* to show an acceptance by a borough of a dedication of property to public use.

3. The bringing by a municipality of a suit to enjoin defendants from using certain property, and the allegation in the bill of a dedication of the property to public use, and an acceptance thereof, was of itself an acceptance.

4. But little affirmative action is required to indicate an intention to accept a dedication of property to public use.

On final hearing on bill, answer, replication and proofs.

*Messrs. Durand, Ivins & Carton,* for the complainant.

*Mr. Aaron E. Johnston* and *Mr. William G. Johnson* (of the Washington bar), for the defendants.

HOWELL, V. C.

Prior to 1877 Cephas M. Woodruff and Frederick H. Smith, Jr., acquired a tract of land in Wall township, Monmouth county, having the Atlantic ocean for its easterly boundary. The tract consisted of upwards of seventy-three acres. They caused a map of the property to be made upon which they delineated streets and avenues and divided the property into two hundred and forty-two building lots. Along the ocean front, and a short distance therefrom, they laid out on the map a street one hundred feet wide which is denominated Ocean avenue. The map shows that easterly of Ocean avenue, and between it and the ocean, there is a strip of land which was testified

to be about fifty to sixty feet wide denominated "bluff," and in front of the "bluff" and between it and low-water mark of the ocean there is a strip of land of a varying width which is represented by the word "beach." This map was called "Map of the Brighton Land Association," and it was under that name that Woodruff and Smith made sale of the lots comprised in the tract. It was filed in the office of the county clerk of Monmouth county on April 10th, 1880. Smith and Woodruff eventually sold all the lots, and in every deed made by them was contained a clause written at the end of the description of the land conveyed, of which the following is a copy:

"The above descriptions are intended to conform to the relative location of said lots as they appear on said map; and so much of the land lying easterly of the streets running to Ocean avenue as would constitute such streets if they were extended to the sea, in common with all the owners of lots on said tract, as a free foot-passage way to the sea, and so much of the land of the streets to the middle thereof as constitute the streets which bound directly on the lots hereby conveyed, and so much of the land lying easterly of the lots fronting on Ocean avenue to the line of low-water mark of the ocean as would be comprised between the most northerly and most southerly lines of the lots on Ocean avenue hereby conveyed, if said lines were extended to the sea. And it is hereby expressly agreed between the parties hereto, their heirs and assigns, that all the streets as laid on said map shall remain and continue as public streets never to be closed, without the written consent of all the owners of lots as laid down on said map, and that all the land designated 'bluff' on said map lying easterly of Ocean avenue shall remain open and free as a park or promenade for all the owners of lots as laid down on said map, and no buildings or structures of any kind shall be erected thereon without the written consent of all said lot owners, except light, open and neat summer houses, which will not materially obstruct the view of the sea from any point of the lots on said map. And such summer houses may be built only by those owning lots on Ocean avenue, and by them only in front of their respective lots, and that all the land designated on said map as 'beach' shall be open and free to the use of all the owners of lots on said map, but no buildings except neat bath houses shall be erected thereon, and such bath houses may be erected only by owners of lots fronting on Ocean avenue in front of their respective lots."

The "bluff" appears from the case to be a series of sand dunes of the width of fifty to sixty feet and to be elevated some ten feet in places above the level of Ocean avenue. The strip marked "beach" is the shingle that extends from the "bluff" to

low-water mark and is nearly if not quite covered with water at high tide.

At the time Woodruff and Smith acquired the land in question and made the map and began the sale of lots according to it, the land was subject to the township government of Wall township. In May, 1884, a borough commission was incorporated which included the Woodruff and Smith tract and other lands, which borough commission on January 4th, 1893, was incorporated under the Borough act of 1891 by the name of The Mayor and Council of the Borough of North Spring Lake. The borough of Spring Lake had been incorporated as a borough in March, 1892, and these two boroughs were consolidated under the name of The Mayor and Council of the Borough of Spring Lake in 1904. This borough is the complainant; it claims the right to regulate that portion of the land appearing upon the Woodruff and Smith map which is included within the street lines and within the lines of the parcels marked "bluff" and "beach" upon the theory that these parcels have been dedicated to public uses. The bill alleges that the defendants Polak and Johnson have made a bathing place in front of two of the lots abutting on Ocean avenue by setting posts in the sand of the "beach" and of the "bluff," and other posts in the ocean below low-water mark, and have connected the same by means of life lines which are used by people who bathe in the ocean at that point; that they have done this without the consent or permission of the complainant borough and without any right on their part to maintain the same; and it prays that the defendants may be compelled to remove their bathing fixtures and be restrained from erecting others. Their right depends upon the question of the dedication to public use of the lands lying between Ocean avenue and high-water mark of the ocean.

The complainant claims that a dedication to public uses of the two strips denominated on the map "bluff" and "beach" must be implied from the circumstances, if not from the deeds themselves. I am of opinion that a dedication cannot arise from the clause in the deeds which relates to the lands easterly of Ocean avenue, but the deeds, the map, the conduct of the lot owners and of the municipality, taken together, in my opinion,

manifest an intention on the part of all concerned to consider the property as property devoted to public uses. The delineation of the "bluff" and the "beach" upon the map without explanatory words would lead one to think that this portion of the property was intended to be treated quite differently from the portion which was divided into lots. Similar facts have been taken in other cases to mean an absolute dedication. In *Methodist Church* v. *Hoboken, 33 N. J. Law (4 Vr.) 13,* a map was made, called the Loss map, in 1804, on which was delineated a plot marked with the word "square." Concerning this, Mr. Justice Depue, in 1868, says: "The word 'square,' as a term of dedication, imported a complete and unrestricted abandonment to the public uses above indicated." In *Price* v. *Plainfield, 40 N. J. Law (11 Vr.) 608,* a map was made upon which there was a plot of about three acres represented on the map by a space in which was written the word "park." This was held by our court of errors and appeals to be a dedication of the plot to public uses as a public park. In *Bayonne* v. *Ford, 43 N. J. Law (14 Vr.) 292,* a map was made on which was laid out an open space which was marked "Annette Park, now belonging to R. Graves." It was held that the property represented by this section of the map was devoted to public uses as a public park. In *Weger* v. *Delran, 61 N. J. Law (32 Vr.) 224,* a map was made which was entitled, "Plan of Bechtold's 4th Addition to the Town of Progress," on which all the blocks, except the *locus in quo,* were divided into numbered lots. The property in dispute was distinguished from the other blocks by a different coloring, by the delineation of trees and paths and by a rough representation of a fountain in the centre. The court of errors and appeals held that the property so marked was devoted to public uses. In *Fessler* v. *Town of Union, 67 N. J. Eq. (1 Robb.) 14,* a map was made indicating an open space one hundred and fifty feet wide and between two and three hundred feet long marked "Liberty Place," in which there was laid down a small lake shaped like an elongated egg marked "Indian Pond." The map showed also within the open space some flower beds and representations of trees. It was held that the property comprised in the open space was dedicated to public uses. In all

these cases the maps had been published and lots had been sold in accordance with them, and all the requirements for dedication had been complied with.

In my opinion, the delineation of the "bluff" and of the "beach" upon the map in evidence in this case, amounted to a tender of dedication to public uses on behalf of the owners of the fee, and in order to complete and finally confirm the title of the public to the easement for public uses nothing was required except an acceptance by the municipal body having jurisdiction over it. I do not find in the case any evidence that the proffered dedication was accepted by Wall township, but immediately upon the organization of the borough commission in May, 1884, there is in the minutes of the commission very early reference to the property and very early action with respect to it. In May, 1884, the council authorized the construction of culverts under the "bluff" to carry off storm water from the streets to the ocean, and thereafter the municipal government did many other things which indicated their acceptance of the dedication. There was a boardwalk constructed partly on the beach and partly on the bluff with money that was raised by private subscription, but the municipality insisted upon supervising the work of laying it, and it was done under the supervision of the officer known as superintendent of the borough. This boardwalk has been renewed three or four times, and has been kept in repair and been maintained all at the expense of the municipality. The bluff and beach have been lighted, policed, cleaned, superintended and watched over by the municipality at its own expense, and since the shore in front of the Woodruff and Smith tract became a part of the complainant corporation the complainant has borrowed money on a bond issue to be used in improving it, including the property in question in this suit. In fact, the bringing of this suit and the allegation in the bill of a dedication and acceptance is of itself an acceptance. *Atlantic City* v. *Snee, 68 N. J. Law* (*39 Vr.*) *39.* It takes but little affirmative action to indicate an intention to accept a dedication. In *Arnold* v. *Orange, 73 N. J. Eq.* (*3 Buch.*) *280,* it was held the construction by the municipality of a public sewer in a dedicated street was an acceptance, and in *Peoples Traction Co.* v. *Atlantic*

*City,* 71 *N. J. Law* (*42 Vr.*) 184, an ordinance providing for the paving of a dedicated street was held to be an acceptance. Besides these affirmative acts on the part of the municipality, it is very clear that the public generally has used the land in question as a public walk and promenade and for the purposes of bathing and taking the air, for a period of upwards of twenty years. In fact, the defendant Polak, when he constructed his· bathing place in the manner above mentioned, was careful to notify the public of the public character of the bathing place that he had erected by putting up a painted sign advertising the fact that his bathing place was open to the public. The case of *Riverside* v. *Pennsylvania Railroad Co.,* 74 *N. J. Law* (*45 Vr.*) 476, maintains this proposition, and is also authority for the right of the municipality to maintain this suit.

There will be a decree for a mandatory injunction to compel the defendants to remove their bathing fixtures from the bluff and beach and restraining them from erecting other or similar ones in the future.