THE HACKENSACK TRUST COMPANY, PROSECUTOR, v. CITY OF HACKENSACK, BERGEN COUNTY BOARD OF TAXATION AND STATE BOARD OF TAX APPEALS, DEFENDANTS.

CITY NATIONAL BANK AND TRUST COMPANY, PROSECUTOR, v. SAME, DEFENDANTS.

WESTWOOD TRUST COMPANY, PROSECUTOR, v. BOROUGH OF WESTWOOD, BERGEN COUNTY BOARD OF TAXATION AND STATE BOARD OF TAX APPEALS, DEFENDANTS.

PEOPLE'S TRUST COMPANY OF BERGEN COUNTY, PROSECUTOR, v. CITY OF HACKENSACK, TOWNSHIP OF TEANECK, BERGEN COUNTY BOARD OF TAXATION AND STATE BOARD OF TAX APPEALS, DEFENDANTS.

Argued January 22, 1936—Decided April 23, 1936.

Before Justices CASE and BODINE.

For the prosecutors, *Morrison, Lloyd & Morrison* (*William J. Morrison, Jr.*).

For the city of Hackensack and township of Teaneck, *Donald M. Waesche.*

For the Bergen county board of taxation, *Walter G. Winne.*

For the borough of Westwood, *Harry Randall* and *Forster W. Freeman, Jr.*

The opinion of the court was delivered by

CASE, J. The question common to all of the above entitled cases, which were argued together both here and below, is this: Did the statute applicable to the 1934 taxing of the capital stock of banks and trust companies permit, in the computation of the assessable value of such stock, a deduction of the assessed value of real estate owned by another corporation all of the capital stock of which was owned by the respective bank or trust company? Each of the prosecutor banking institutions owned all of the capital stock of another corporation and the latter corporation, in each instance, owned, by record title, the real estate whereon the respective banking business was conducted. The capital stock of each of the prosecutor banks was valued by the assessors without an allowance for the assessed value of such real estate. On appeal the Bergen county board of taxation and the state board of tax appeals, each in turn, affirmed that procedure. The question is brought before us by writs of *certiorari.*

The statute on taxation of bank stock, chapter 265, *Pamph. L.* 1918, *p.* 997; 2 *Cum. Supp. Comp. Stat., p.* 3559, as amended by chapter 2, *Pamph. L.* 1934, *p.* 12, provided in section 1 that the shares of common corporate stock of banks and banking associations, including trust companies, shall be assessed and taxed according to their true value; in section 2 that the value of each share of common stock "shall be ascer-

tained and determined by adding together the amount of the capital, surplus and undivided profits of such bank, banking association or trust company, and deducting therefrom the assessed value of the real property of such bank, banking association or trust company * * *;" in section 7 that "it shall be the duty of said bank, banking association and trust company to pay said tax assessed against such shareholders on demand, and said bank, banking association or trust company shall have a lien upon the shares of common stock for such payment and may retain the amount so paid out of the dividends that may be declared on such shares;" and in section 8 that "if any bank, banking association or trust company shall * * * request the county board of taxation" to make the assessment against it and shall promise to pay the tax, then the levy "shall be assessed to and in the name of the bank, banking association or trust company, and no list of shareholders shall be required * * *; provided, that nothing herein contained shall be construed as a taxation of property as distinguished from capital stock."

It is the contention of the prosecutors that a wholly owned subsidiary which holds record title to the bank building and site is a mere agency or instrumentality of the bank, that such bank building and site are in fact "the real property of such bank" and that consequently the assessed value thereof should be deducted in determining the value of the bank shares for taxation. It is true that equity will reach through a corporate structure to prevent or undo a fraud. *The National, &c., Co.* v. *Work,* 109 *N. J. Eq.* 468. The law courts have held a dominant corporation liable for the tort of a wholly owned subsidiary. *Ross* v. *Pennsylvania Railroad Co.,* 106 *N. J. L.* 536. Support for some aspects of the argument may be found in *Commonwealth* v. *Westinghouse Air Brake Co. (Pa.),* 95 *Atl. Rep.* 807, and *McCormick & Co.* v. *Bassett (Utah),* 164 *Pac. Rep.* 852. Nevertheless we are brought to the opposite conclusion and for the reasons following:

Proceedings to prevent an act of incorporation from accomplishing wrong against third persons are not precedents

herein. The corporate person which effected the second incorporation is the aggressor in seeking to establish as a right that which does not logically flow from its own act. Two things are at once clear upon the reading of the statute: The tax is upon capital stock as distinguished from physical property; and, except as the bank voluntarily assumes the assessment, the tax is chargeable against the holder of the assessed stock. The common meaning of the phrase "the real property of such bank" is "the real property owned by such bank." "Of" is here used, according to our interpretation, in its possessive sense. In the construction of legislative acts words in common use are to be taken in their ordinary signification. *Evening Journal Association* v. *State Board of Assessors,* 47 *N. J. L.* 36; *Storage Co.* v. *Assessors,* 56 *Id.* 389. None of the prosecutor corporations owns the real estate whereat its banking business is maintained. Further, the rule is that to exempt property from a tax burden the statute must express the legislative intent to that end in clear and unmistakable terms. *Fairview, &c., Co.* v. *Fay,* 90 *Id.* 427; *affirmed,* 91 *Id.* 687. The purposes in setting up the several holding companies do not appear. We may assume, however, that in each instance it was considered to the advantage of the bank *not* to have the ownership of the real estate in the banking company. It may have some bearing that as to several of the banks involved the assessed value of the banking house was in excess of the twenty-five per centum of paid in capital stock and permanent surplus allowed, without special grant, to banking institutions for investment in real estate for banking house and rental purposes. See section 6 of the Bank act. Chapter 173, *Pamph. L.* 1899, *p.* 431, as amended by chapter 41, *Pamph. L.* 1920, *p.* 84. If the corporate method of doing business is adopted, the advantages and disadvantages of that system go hand in hand; and if a corporation segregates some of its interests into a separate legal entity, it should, it seems, accept the ill results along with the good. If any of the prosecutors has any direct interest in the real estate as such, it is an untaxed leasehold interest. Each institution has an indirect control over the property of its

subsidiary through an instructed directorate, or a directorate identical with its own, but every vestige of this control could and would be wiped out by the sale and transfer of its capital stock holdings—a chattel interest. It is impossible to forecast the confusion that would ensue if the theory be adopted that the consolidation of all of the outstanding capital stock of a corporation in a single ownership shall, without statutory authority and merely because the owner is benefited thereby, impair the separateness and distinctiveness of an incorporation. An individual and a corporation whose stock is all owned by that individual are not the same even in equity; ownership by the corporation is not ownership by the individual, and when the title is transferred from the individual to the corporation, a fundamental change has occurred. *White* v. *Evans,* 117 *N. J. Eq.* 1. In the legislative wisdom a statute may intervene to the contrary, and of this a timely and conspicuous instance is chapter 210, *Pamph. L.* 1935, *p.* 501, which expressly provides, applicable to cases thereafter arising, that the precise deduction for which prosecutors now contend shall be made. The legislature could have enacted such a provision applicable to the 1934 stock tax assessment; but it has not done so, and we must reach our conclusion in the light of that omission. The passage of the 1935 statute permits the fair inference that the legislature was to its knowledge putting upon the statute books that which was not already there as to future assessments and still would not be there as to past assessments. The desired deduction is entirely a matter of statute. If the statute does not give it, it does not exist. We think that the statute does not give it.

The question of double taxation, criticised in such cases as *State* v. *Tunis,* 23 *N. J. L.* 546; *Jersey City Gaslight Co.* v. *Jersey City,* 46 *Id.* 194; *Trenton* v. *Standard Fire Insurance Co.,* 76 *Id.* 79; *affirmed,* 77 *Id.* 757, and *Old Dominion C. M. & S. Co.* v. *State Board of Taxes,* 91 *Id.* 173, is, in our view, not present because the tax is laid primarily against bank stockholders who hold no stock in the corporation which has title to the real estate, and the tax becomes the bank's

debt only if the bank voluntarily so requests. Moreover, the pertinent statutory provisions differ from those effective in the cited cases.

The precise status of Peoples Trust Company of Bergen county is not apparent. This banking corporation appears to have resulted from a reorganization of one institution, a merger with a second and the assumption of the rights and liabilities of a third. The details are not entirely clear, but in view of our conclusions we need not approach that difficulty.

The judgments under review will be affirmed, with costs.