28 N.J. Super. 199 (1953)
100 A.2d 309
LLOYD A. SARTY, ET ALS., PLAINTIFFS-RESPONDENTS,
v.
THE TOWNSHIP OF MILLBURN, ETC., ET ALS., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 2, 1953.
Decided November 6, 1953.
*201 Before Judges CLAPP, GOLDMANN and EWART.
Mr. Reynier J. Wortendyke, Jr., argued the cause for defendants-appellants.
*202 Mr. Harrison F. Durand and Mr. Marshall Crowley argued the cause for plaintiffs-respondents (Messrs. Soons & Durand, attorneys; Mr. Doane Twombly, of counsel).
The opinion of the court was delivered by GOLDMANN, J.A.D.
Defendants, the Township of Millburn and the members of its township committee, appeal from a judgment of the Law Division entered in favor of plaintiffs which held, among other things, that an ordinance for the improvement of Joanna Way in the Township of Millburn, adopted May 5, 1952, was invalid and had to be set aside. Plaintiffs are owners of property abutting Joanna Way.
Prior to December 3, 1934 the Hartshorn Estate, a New Jersey corporation, was engaged in the development of what is known as the old Short Hills section of the Township of Millburn. In the course of this development it constructed Joanna Way and the extension of Lake Road running north from South Lake Shore Drive, as a single project. By letter dated December 3, 1934 and addressed to the township committee, the Hartshorn Estate dedicated Joanna Way and the extension of Lake Road to the township, announcing that it had paved these roads in accordance with township specifications and requesting that the township inspect the roads and have them accepted as township roads. Joanna Way was never accepted by formal resolution of the township committee. However, the extension of Lake Road was accepted by acts of dominion and control prior to 1942 and has been maintained and repaired at township expense. Both roads were 20 feet wide. Some 21 other roads in the immediate area and constructed in the same way have, like Lake Road extension, been accepted by acts of dominion and control.
It may be observed that in 1934 there was no ordinance or regulation fixing standards and requirements for the construction of roads, sewers and drains in Millburn Township. The first standards and requirements ordinance was adopted March 2, 1936 and required, among other things, *203 that streets to be constructed, or dedicated streets to be accepted, conform to certain standards. On November 7, 1938 this ordinance was amended to provide for the first time for a 30-foot-wide pavement in such streets. Section 29 of the ordinance provides that a township committee may, in its discretion, waive any of its requirements with respect to any street existing on the date of its adoption in 1936. This would, of course, include Joanna Way. Such waiver has been given for other streets not complying with the ordinance, including one built in 1934 which was 20 feet wide and which was accepted by formal resolution in 1945.
It would appear that at the time of their dedication in 1934, Joanna Way and the extension of Lake Road were constructed in substantial conformity with township specifications. The township made no criticism of the construction features in Joanna Way until February 24, 1944, when the township engineer wrote the Hartshorn Estate requesting that certain improvements in the street be effected.
On May 5, 1952 the township committee adopted an ordinance for the improvement of Joanna Way which dealt with the road as "a dedicated but unaccepted street"; provided for its improvement by the substantial rebuilding of the street, including the construction of sewer lines, storm water drains, utility laterals, granite block curbing and the like; provided for a modified penetration macadam pavement 30 feet in width throughout; classified the improvement as local and directed that its entire cost be assessed against lands and real estate which might be benefited thereby; specifically negated classifying the improvement as a current expense of the township; provided for financing the cost of the improvement; and further provided that upon completion to the satisfaction of the township committee, Joanna Way be deemed accepted as a public street. The ordinance was adopted after a public hearing at which the objections of the owners of more than 80% in value of the land fronting on Joanna Way were fully presented. No collateral evidence of public necessity was introduced.
*204 On May 14, 1952 plaintiffs, owners of more than two-thirds in value of lands proposed to be assessed for benefits under the ordinance, appealed from the determination of the township committee that the contemplated improvement was a public necessity. The appeal was taken pursuant to R.S. 40:49-8.
On May 17, 1952 plaintiffs filed a complaint in lieu of prerogative writs challenging the validity of the ordinance. The first count of the complaint demanded judgment that: (1) the ordinance be set aside and declared null and void; (2) it be set aside insofar as it provided for the acceptance of Joanna Way as a public street upon completion of the improvement; (3) it be set aside for the further reason that it provided for assessment of the entire cost of the improvement upon lands that might be benefited thereby; and (4) Joanna Way had been dedicated and accepted as a public street prior to the adoption of the ordinance. By a second count plaintiffs demanded judgment that the township was under a duty and required to maintain Joanna Way as a public street, and directing the township committee to repair it as such.
The two causes were consolidated, and by stipulation the issues were submitted to the Law Division judge for disposition on the basis of the pleadings and the admissions therein, the pretrial order, depositions, exhibits, oral argument and briefs. The parties also stipulated that the court might view and inspect Joanna Way and other streets in the area.
The opinion filed by Judge Hughes, sitting in the Law Division, contains findings of fact and conclusions of law. He found in favor of plaintiffs on all issues embraced in the pleadings except their demand for a mandatory injunction requiring the township committee to repair and maintain Joanna Way. Thereafter, on June 17, 1953, judgment was entered in favor of plaintiffs which provided that: (1) Joanna Way had been accepted by the township by acts of dominion and control prior to May 5, 1952, the date of the adoption of the ordinance; (2) the township was under a legal duty to maintain and repair the street; (3) the *205 application for a mandatory injunction directing defendants to repair and maintain the street was denied without prejudice; (4) there was not on May 5, 1952, nor is there presently, a public necessity for the improvement, and the township committee's determination of public necessity must be set aside; and (5) the adoption of the ordinance was unreasonable in all the circumstances of the case, and the ordinance is invalid and must be set aside. Defendants appeal.
Defendants argue there was never any acceptance of the dedicated street so as to charge the municipal governing body with the duty of maintaining Joanna Way. We are convinced that the township accepted Joanna Way as a public street by acts of dominion and control. The complaint lists 12 such acts, all but one of which were admitted in the answer.
Formal acceptance of a dedicated road by resolution is not necessary; such a road may also be accepted by acts of dominion and control exercised by the local governing body. Morse v. Borough of Essex Fells, 121 N.J. Eq. 202, 212 (Ch. 1936); George Van Tassel's, etc., Inc. v. Town of Bloomfield, 8 N.J. Super. 524, 530 (Ch. Div. 1950); 3 Dillon, Municipal Corporations (5th ed. 1911), § 1087, pp. 1727 et seq.; 11 McQuillin, Municipal Corporations (3rd ed. 1950), §§ 33.47 and 33.48, pp. 698-711. Although it was said in Borough of Spring Lake v. Polak, 76 N.J. Eq. 212, 216 (Ch. 1909), that there need be "but little affirmative action to indicate an intention to accept a dedication," our former highest court said in Schmidt v. Spaeth, 86 N.J.L. 179, 182 (E. & A. 1914):
"* * * formal action on the part of such a [governing] body, indicating a present intention to accept a dedication of land as a public highway, renders it such. By `formal action' is not meant the passing of a formal resolution by the terms of which the dedication is accepted, but such action as conclusively shows an intention to presently treat the dedicated land as an existing public way. * * * In fine, any formal action with relation to property dedicated to public use [as a highway,] taken by the representatives of the public having authority over highways, which can only be legally *206 justified upon the theory that the land dedicated is presently subject to a public user, constitutes a formal acceptance of the dedication." (Italics ours)
See George Van Tassel's, etc., Inc. v. Town of Bloomfield, 8 N.J. Super. 524, 530 (Ch. Div. 1950); Morse v. Borough of Essex Fells, 121 N.J. Eq. 202, 212 (Ch. 1936). And in 11 McQuillin, Municipal Corporations (3rd ed. 1950), § 33.54, pp. 727-8, the general rule is stated as being that proof of acceptance by the public must be unequivocal, clear and satisfactory, and that acts of acceptance may be shown either by direct or circumstantial evidence.
The township takes the position that it has been consistent in its express refusal to accept the dedication of Joanna Way; this shows there was no intention by it to accept, and the interested property owners recognized such to be the fact. Although Schmidt v. Spaeth, above, speaks of "intention," a study of the cases leads one to the conclusion that this intention will be drawn from acts done, even in the face of an express denial of such intention, where the township uses the property in a way which can only be justified legally upon the theory that the township has accepted the dedication.
We turn to a consideration of the 11 acts set out in the complaint and admitted by the answer, which plaintiffs contend demonstrate conclusively that the township accepted the dedication of Joanna Way. We need not discuss all of them; some of them, like clearing the snow off the road and collecting garbage set out by residents, may be explained as acts done out of consideration for the public safety and welfare. Our attention is called, however, to the following acts of township dominion and control:
1. By resolution of December 19, 1949 the township granted Highland Estates, Inc., a developer, permission to construct a sewer line extending under part of Joanna Way to connect the Stewart Road system to the north with the northerly end of the existing sanitary sewer in Joanna Way. Although the resolution provided that such grant of permission should not be deemed to constitute an acceptance of Joanna Way or *207 an assumption of responsibility for its condition or maintenance, the act is more eloquent than the reservation. To make such extension required breaking the pavement of Joanna Way and opening the sewer underneath. The only legal basis for this resolution was that Joanna Way was a public street. The connection would permit the development of the Stewart Road section, and this would certainly be of benefit to the township. The municipality must accept responsibility for this unequivocal act of dominion and control; it cannot use a road as a public street and at the same time disclaim responsibility for maintenance which such user entails.
2. Persons not residing on Joanna Way have been permitted, with the approval of the township, to dig up the pavement in the street for the purpose of connecting with the sanitary sewer underneath. Such permission is expressly admitted in the answer, and although on the argument the township claimed that the permission was not given by any positive action, such as the issuance of a permit or the adoption of a resolution, but rather by passive acquiescence, the township is bound by the pleadings. The only legal justification for granting to persons not residing on Joanna Way the right to dig up the pavement and make connections with the sewer underneath is that the township then and there considered that Joanna Way was a public street to which the township had access for township purposes. Cf. Morse v. Borough of Essex Fells, 121 N.J. Eq. 202 (Ch. 1936), where the defendant borough connected a lateral to its main sewer.
3. In 1950 the township, pursuant to an ordinance adopted August 21, constructed a new storm sewer to drain the surface waters flowing from Parsonage Hill area lying to the northeast of Joanna Way. The project was undertaken in accordance with a certain agreement between Richard and Alta Blaine and the township dated June 7, 1950. The sewer installed by the township was connected with one constructed by the Blaines running through Parsonage Hill Road across a right-of-way granted by one Pring, to a point in the *208 intersection of Lake Road extension and Joanna Way. To reach Lake Road extension, the sewer had to cross under Joanna Way. The installation of this new storm sewer was designated by the ordinance of August 21, 1950 as a general improvement, the cost of which (after payment by the Blaines of 33 1/3% thereof) was to be paid out of the township capital improvement fund and not assessed against the real estate benefited thereby. At the time of such construction one or two storm drains were installed by the township in Joanna Way, where it intersected with the extension of Lake Road. The township also resurfaced the extension of Lake Road and the portion of Joanna Way under which the storm sewer was constructed. This project was an unequivocal act of dominion and control over Joanna Way on the part of the township.
Some weight should also be accorded to two other acts. The first was the connection of the sanitary sewer constructed by the Hartshorn Estate beneath Joanna Way with the township sewerage system in 1934. The township inspected and approved that sewer when it was built and connected with the township system. A plan of the improvement, admitted in evidence, shows that there were eight manholes built in the pavement on Joanna Way, giving the township access to the sanitary sewer. The control of Joanna Way by way of the manholes in the pavement was necessary to get into the sanitary sewer which had become part of the township sewerage system, for the purpose of maintaining it. The second circumstance was that in the period from 1934 to 1944 plaintiffs and other persons who owned improved property on Joanna Way tied in with the sanitary sewer beneath that road, either with the approval of the township or without objection by it. Defendants admit that such connections required the breaking up of the road. Section 11 of the township standards and requirements ordinance provided that no person could connect with any sanitary or drainage sewer without first obtaining a municipal permit and complying with the ordinance respecting street openings or excavations. Although there is no mention in the record *209 of permits issued for such connections, the presumption is that those who made connections acted legally and first obtained the necessary permits.
These acts, taken collectively, convince us that the township without question exercised dominion and control over Joanna Way in such manner as to spell out its acceptance as a public street, within the principle enunciated by Schmidt v. Spaeth, above.
In view of our conclusion that Joanna Way was accepted as a public street, the township was obviously under the duty of repairing and maintaining it. Cf. Morse v. Borough of Essex Fells, 121 N.J. Eq. 202, 213 (Ch. 1936); Atlantic City v. Groff, 64 N.J.L. 527, 528 (Sup. Ct. 1900); 25 Am. Jur., Highways, § 56, p. 371; 26 C.J.S., Dedication, § 55, p. 143; 13 McQuillin, Municipal Corporations (3rd ed. 1950), § 37.16, p. 72.
Defendants argue that even if Joanna Way be deemed to be accepted as a public street, R.S. 40:56-1 et seq. clearly authorized the township to improve it as a local improvement and to assess the cost upon the lands benefited thereby. The several improvements contemplated by the ordinance of May 5, 1952 would ordinarily fall within subsections (b), (c), (d), (e) and (i) of that statute.
We pass over the argument that the ordinance is invalid because it deals with Joanna Way as a "dedicated but unaccepted street"  that is, not a public street  whereas subsections (b) to (e) of the statute clearly require that a local improvement ordinance must relate to a public street, alley or highway. We hold the ordinance invalid on another ground  it assesses the entire cost of the proposed improvement upon lands and real estate which may be benefited thereby. Defendants insist that the improvement is a very necessary one for the municipality. This logically indicates that the motivating thought behind the action of the township committee in approving the ordinance was that the convenience, safety and welfare of the general municipality required that Joanna Way be improved. This is inconsistent with assessing the entire cost against adjoining landowners, *210 apparently on the basis that they, and only they, are wholly benefited, as distinguished from the general community. If the entire township stood to benefit, it was unjust and discriminatory to impose the whole cost against the properties along Joanna Way, and no others. Cf. River Edge Homes, Inc. v. Borough of River Edge, 130 N.J.L. 376, 380 (Sup. Ct. 1943); Vannoy v. Borough of Pennington, 9 N.J. Misc. 98, 102 (Sup. Ct. 1931). The total assessments on land and real estate along that street should not be in excess of the benefits actually conferred upon them.
In view of our determination, it becomes unnecessary to pass upon the questions raised by plaintiffs of whether there can be an appeal to this court from the determination of the Law Division as to the public necessity of the improvement (see R.S. 40:49-8), or whether there was any public necessity to support the ordinance.
Affirmed.