HAVEN HOMES, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT, v. RARITAN TOWNSHIP, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued June 16, 1955—Decided June 27, 1955.

*Mr. Fred G. Stickel, III,* argued the cause for appellant (*Mr. Meyer Q. Kessel,* on the brief; *Mr. Thomas L. Hanson,* attorney).

*Mr. Samuel Kaufman* argued the cause for respondent (*Mr. Andrew L. Kaufman* and *Mr. John M. Kaufman,* on the brief; *Messrs. Bilder, Bilder and Kaufman,* attorneys).

*Mr. Philip R. Gebhardt* presented a brief on behalf of New Jersey Institute of Municipal Attorneys, as *amicus curiae* (*Mr. Bernard W. Vogel,* of counsel).

The opinion of the court was delivered by

HEHER, J. ▮ Plaintiff was given judgment in the Law Division of the Superior Court, *mandamus* in nature, directing the defendant municipality "to institute proceedings to condemn the water mains installed by the plaintiff" in streets laid out on a tract within the municipality developed for one-family houses. This, on the premise that the water mains constituted property of the plaintiff taken by the municipality in the exercise of the power of eminent domain for which compensation is required to be made by *Article* I, *paragraph* 20, of the 1947 *Constitution,* and so the municipality may be enjoined to institute condemnation proceedings for the purpose of making compensation for the property taken. See *Haycock v. Jannarone,* 99 *N. J. L.* 183 (*E. & A.* 1923); *Brown v. Murphy,* 136 *N. J. L.* 183 (*E. & A.* 1947).

This is the situation of fact: The housing project in question involved the construction of 368 one-family houses. The land was developed by sections, eight in all; each section was subdivided into streets and building lots; the essential utilities, such as storm sewers, sanitary sewers and water, and street improvements, such as curbs and pavements, were installed and constructed prior to the approval and filing of the section map; the subdivision or plat of the particular section was then submitted to the local planning board for its approval for filing and, such approval being had, it was submitted to the local governing body for confirmation and, upon such confirmation, it was filed with the county clerk. This filing of the section map or subdivision plat was followed by resolutions adopted by the local governing body formally accepting the streets thus laid out and the utilities installed therein. Of the nature of the action, more hereafter. The municipal acceptance was had at the instance of the plaintiff developer, presumably to make available the financial aid promised by the Federal Housing Administration and to facilitate marketing of the houses. It is denied that this was a condition laid down by F. H. A. But there can be no doubt that the dedication of the streets and the service facilities was indispensable to an advantageous sale of the houses on the abutting lands; and it would seem that prudent management by F. H. A. would have required, as a condition precedent to financing, a course of action that would give the purchaser of the finished house title in fee to the center of the street, subject only to the public easement for the common good, a measure basic, it would seem, to the fulfillment of the governmental policy in its keeping. All the houses in these several sections were eventually sold and conveyed, and thus the plaintiff developer conveyed away its entire interest in the lands, although it now asserts, as against the municipality, but not the abutting landowners, the taking by the municipality for public use of a right of property in the water mains for which compensation must be made according to constitutional precept.

The complaint is in three counts: the first pleads a right of compensation for the water mains through the medium of a compulsory condemnation proceeding; the second alleges that defendant took possession of the "mains of the plaintiff" under an agreement "to pay for the same in accordance with the formula of the Public Utilities Commission of New Jersey," providing for "the payment to the plaintiff over a period of years as the defendant receives payment from inhabitants for water sold to them by defendant," and demands specific performance of the pleaded agreement; and the third count charges that defendant "requested the plaintiff to construct the mains at its own cost and expense and thereafter to transfer title thereto to the defendant for which the defendant would reimburse the plaintiff for the cost of construction," and that defendant has "derived considerable revenue and profit from the sale of water" conveyed through the mains, and its utilization of the mains "has resulted in the unjust enrichment of the defendant at the expense of the plaintiff."

There were cross-motions for summary judgment, on the common assumption that the essential facts are not in dispute. In entering judgment for the plaintiff on the first count, the Superior Court judge said that, in the event of an appeal, "any other phases of the matter" would be held "in abeyance" until the disposition of the appeal.

The case is here by this court's certification for decision of defendant's appeal to the Appellate Division.

The municipality contends that there was an unqualified dedication to public use of "the streets, the improvements thereon and the utilities therein," rendered effective by its acceptance on behalf of the public. Acknowledging dedication of the "streets," plaintiff nevertheless insists that this devotion of land to the general use, depending as it does upon intention, did not include the water mains. It is said that intention is manifested by acts and the "filing of a map with streets, but not water mains, cannot establish a dedication of water mains." The omission of an express reservation, it is argued, would have significance only if "the map showed

water mains; the water mains not appearing, obviously there was and could be no reservation; no dedication appearing, there was nothing to reserve."

But the reasoning is contrary to the normal and natural import of the dedication and the acceptance, related to the particular circumstances. Quite apart from plaintiff's own need, the several resolutions of the local governing body, enumerating the improvements, sanitary sewers, water mains, curbs, pavements, some or all as the case might be, provided for acceptance of the street as shown on the map, "together with the said improvements constructed thereon and therein * * * for future maintenance" by the township "at no further cost to the abutting property owners"; and where the improvements had not been completed, the plaintiff developer was obliged to provide a completion bond. As just said, the houses could hardly be financed and sold were the streets and underlying utilities not devoted to the common use. And plaintiff concedes that as to the purchasers of the dwelling houses, this is precisely the effect of what was done.

Moreover, before final approval of plats, *N. J. S. A.* 40:55–1.21, the governing body may require, in accordance with the standards adopted by ordinance, the installation, or the furnishing of a performance guarantee in lieu thereof, of certain specified improvements it may deem to be necessary or appropriate or in the public interest, water mains included.

In an early case in this State, Chancellor Zabriskie declared that "laying out land in lots and streets clearly marked as such, and selling lots bounded on such streets without any qualification, must, both upon principle and authority, be held as a dedication to the public, as streets. An intention to qualify the dedication concealed within the breast of the owner, or not expressed in some way on the map or in the conveyances which are the evidence of, and constitute the dedication, cannot be regarded. The dedication is absolute." *Pope v. Town of Union,* 18 *N. J. Eq.* 282 (*Ch.* 1867). See *R. S.* 40:55–12, 13, 14.

And the same learned jurist, in an earlier case, held it to be established principle that "the owner of land bounded

on a street or highway, is presumed to own the soil in front of his lot to the middle of the street, subject to the easement of the public highway." *Glasby v. Morris*, 18 *N. J. Eq.* 72 (*Ch.* 1866). Nothing short "of an intention expressed *in ipsis verbis,* to 'exclude' the soil of the highway, can exclude it." *Salter v. Jonas*, 39 *N. J. L.* 469 (*E. & A.* 1877). There, Chief Justice Beasley said:

"In our practice, in the conveyance of lots bounded by streets, the prevailing belief is, that the street to its centre is conveyed with the lot. Among the mass of the people it is undoubtedly supposed that the street belongs, as an appurtenance, to the contiguous property, and that the title to the latter carries with it a title to the former. This belief is so natural that it would not be easily eradicated. As a general practice, it would seem preposterous to sever the ownership to these several particles of property. Under ordinary circumstances, the thread of land constituting the street is of great value to the contiguous lots, and it is of no value separated from them. It would rarely, occur that the vendee of a city lot would be willing to take it separated in ownership from the street, and it would as rarely occur that a vendor would desire to make such severance. In my own experience, I have never known such an intention to exist, and it is safe to say that whenever it does exist, the conditions of the case are peculiar. And it is the very general notion that these two parcels of property are inseparably united, and pass as a whole by force of an ordinary conveyance, that accounts for the absence of any settled formula in general use for the description of city lots in a transfer of their title."

See also *Saco v. Hall,* 1 *N. J.* 377 (1949).

It is a corollary of these considerations that by the dedication of land for a public street the municipality "acquires not only the easement of passage but also the right to grade and improve the surface of the street, and to lay sewers, drains and pipes for various utilities beneath the surface." *Levi v. Schwartz,* 201 *Md.* 575, 95 *A. 2d* 322, 36 *A. L. R. 2d* 1241 (*Ct. App.* 1953). Compare *Nicoll v. Telephone Company,* 62 *N. J. L.* 733 (*E. & A.* 1899). See, also, 11 *A. L. R. 2d* 549.

These are the attributes of a public street:

"(1) the surface; (2) so much beneath the surface as is necessary for a foundation for the surface and for water mains, gas

pipes. sewer pipes and conduits of various sorts; and (3) enough above the surface to afford clearance for traffic. A street includes so much of the depth as may not unfairly be used as streets are used." *McQuillin on Municipal Corporations (3d ed.), section 30.06.*

A street "means more than the surface, it means the whole surface and so much of the depth as is or can be used, not unfairly, for the ordinary purposes of a street. It comprises a depth which enables the urban authority to do that which is done in every street, namely, to raise the street, and to lay down sewers, for, at the present day, there can be no street in a town without sewers, and also for the purposes of laying down gas and water pipes." *City of Leadville v. Bohn Mining Co.,* 37 *Col.* 248, 86 *P.* 1038, 8 *L. R. A., N. S.* 422 (*Sup. Ct.* 1906).

In assessing the quality of the dedication, it is not the actual, unrevealed intention that controls, but rather the intention manifested by the acts or conduct of the dedicator. Plats of city property are subject to the general rules for the construction of deeds or other instruments pertaining to real property. Generally speaking, ambiguities are resolved against the dedicator and in favor of the public. *City of Russell v. Russell County B. & L. Ass'n,* 154 *Kan.* 154, 118 *P. 2d* 121 (*Sup. Ct.* 1941).

Here, the dedication was not made subject to the reservation claimed by plaintiff, and thus there is no occasion to consider the principle of dedication *cum onere. Avis v. Vineland,* 56 *N. J. L.* 474 (*Sup. Ct.* 1894); *Tallon v. Hoboken,* 59 *N. J. L.* 383, 385 (*Sup. Ct.* 1896); *Young v. Landis,* 73 *N. J. L.* 266 (*Sup. Ct.* 1906); *Baird v. Board of Recreation of South Orange,* 108 *N. J. Eq.* 91 (*Ch.* 1931), affirmed 110 *N. J. Eq.* 603 (*E. & A.* 1932); *Canda Realty Co. v. Carteret,* 136 *N. J. Eq.* 550 (*Ch.* 1945); *Whipple v. Teaneck,* 134 *N. J. L.* 498 (*Sup. Ct.* 1946). Were the asserted reservation made known at the time, municipal acceptance might have been refused. The unqualified dedication was in the interest of plaintiff as well as the public; as said, the reservation would not have been compatible with the fulfillment of the project. And it goes without saying

that a reservation basically repugnant to the grant itself or to public policy cannot be sustained. In *St. Louis v. Koch*, 335 *Mo.* 991, 74 *S. W. 2d* 622 (*Sup. Ct.* 1934), conditioning the dedication upon payment of damages in condemnation was set aside as inconsistent with the grant itself.

In fine, the dedication constituted a surrender of such right or interest as the plaintiff had in the water mains, and so there was no taking of property for which damages are assessable in condemnation. An analogous case is *City of Shawnee v. Thompson*, 275 *P. 2d* 323 (*Okl. Sup. Ct.* 1954).

We are not now concerned with the second and third counts of the complaint. The second count was abandoned on the oral argument. The third count was, at the direction of the Superior Court judge, reserved for action after the termination of this appeal; and the question of its sufficiency is not before us.

The judgment is reversed; and the cause is remanded with direction to enter summary judgment for the defendant township on the first count of the complaint.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—Justice WACHENFELD—1.