ANDREW, J. T. C.
Plaintiff National Paving Co., Inc., a New Jersey corporation with principal offices in Berlin, New Jersey, seeks review in this *135 court of a use tax assessment rendered by defendant Director of the Division of Taxation.
Plaintiff manufactures asphalt and engages in paving contracting and subcontracting. Plaintiff sells the asphalt which it manufactures to other contractors, and uses it itself in its own paving work. It is only the particular paving subcontracting work described below which forms the basis of the disputed assessment.
The matter has been submitted to the court on an agreed statement of facts and memoranda of law. The stipulated facts follow. During the tax years of 1975, 1976 and 1977 plaintiff contracted with various developers and general contractors to do the street and road paving work at numerous construction projects involving New Jersey housing developments and subdivisions. The performance of each of these subcontracts required plaintiff to supply the materials for use in the paving process. It is the supply of these materials which constitutes the subject matter of the assessment.
As a prerequisite to the commencement of each project with which plaintiff was involved as a subcontractor, the developer or general contractor was required by each municipality to post a performance bond, naming the municipality as the beneficiary. The purpose of the bond was to ensure that those areas of construction which were in the public interest, including the paving of streets, complied with applicable standards. The terms of these bonds provided that they could not be released unless the work covered by the bonds, including the paving, satisfied all municipal standards and was fully acceptable to the municipal authorities at the time the streets were to be formally dedicated.
Throughout the course of each construction project the paving work undertaken by plaintiff was subjected to periodic inspections by municipal architects, engineers and inspectors whose purpose it was to evaluate the paving work in light of applicable construction standards. Following the inspections the municipal architects, engineers and inspectors rendered written reports to *136 the municipalities advising them whether the paving work was completed in accordance with all standards or required correction for any reason.
The property on which plaintiff performed the subcontract paving work was owned by the developers and general contractors at the time the work was done. Formal dedication to the municipalities of the streets upon which plaintiff worked did not occur until after the completion of construction. Plaintiff billed and was paid by the developers and contractors for whom it did the paving work and not by the municipalities in which the streets and roads were located.
An audit conducted by the Division of Taxation, covering the period from January 1,1975 to December 31, 1977, resulted in a final determination that plaintiff was liable for a use tax deficiency in the amount of $124,877.44, plus «penalty and interest. The audit revealed that plaintiff did not collect or pay any tax on the materials used for the paving of roads as described above. The assessment was based upon § 6 of the Sales and Use Tax Act, N.J.S.A. 5'4:32B-1 et seq., which provides for the imposition of a compensating use tax. In pertinent part, the statute provides as follows:
Unless property or services have already been or will be subject to the sales tax under this act, there is hereby imposed on and there shall be paid by every person a use tax for the use within this State, . .. except as otherwise exempted under this act, ... (B) of any tangible personal property manufactured, processed or assembled by the user, if items of the same kind of tangible personal property are offered for sale by him in the regular course of business.... [N.J. S.A. 54:32B-6]
It is plaintiff’s contention that the subcontracts which it entered into gave rise to a relationship between itself and the various municipalities in which the work was performed, which qualifies it for exemption from use tax pursuant to N.J.S.A. 54:32B-8(w) (“section 8(w)”) and N.J.S.A. 54:32B-9(a)(l) (“section 9(a)(1)”). Section 8(w) provides as follows:
Receipts from the following shall be exempt from the tax on retail sales imposed under [N.J.S.A. 54:32B-3(a)] and the use tax imposed under [N.J.S.A. 54:32B-6]:
*137 (w) Sales made to contractors, subcontractors or repairmen of materials, supplies or services for exclusive use in erecting structures or building on, or otherwise improving, altering or repairing real property of organizations described in [N.J.S.A. 54:32B-9(a) and (b)], provided any person seeking to qualify for this exemption shall do so pursuant to such rules and regulations and upon such forms as shall be prescribed by the director.
Section 9(a)(1) provides:
(a) Except as to motor vehicles sold by any of the following, any sale, service or amusement charge by or to any of the following or any use or occupancy by any of the following shall not be subject to the sales and use taxes imposed under this act:
(1) The State of New Jersey, or any of its agencies, instrumentalities, public authorities, public corporations (including a public corporation created pursuant to agreement or compact with another State) or political subdivisions where it is the purchaser, user or consumer, or where it is a vendor of services or property of a kind not ordinarily sold by private persons.
The applicability of the exemption statute is the only issue before the court. Plaintiff does not challenge the amount of the assessment.
Implicit in the briefs of both parties is the fact that the municipalities in which plaintiff performed its paving activities are exempt entities within the contemplation of § 9(a)(1).[1] Also implicit is the acknowledgment that if the streets and roads on which plaintiff conducted its paving work were the “real property of” those municipalities at the time the work was done, § 8(w) applies. The issues facing the court, then, are the following: (1) what is the meaning of the phrase “real property of organizations,” as that phrase is used in N.J.S.A. 54:32B-8(w), and (2) whether, under the circumstances of this case, the streets and roads upon which plaintiff did the work were the real property of the municipalities at the time the work was performed.
*138 Section 8(w) exempts from taxation the use of road and street paving materials for improving, altering and repairing “real property of organizations” described in § 9(a)(1). According to plaintiff, the meaning of the word “of” in the phrase “real property of organizations” is unclear and creates an ambiguity in the statute. Plaintiff asserts that tax laws that are reasonably doubtful in meaning should be construed favorably to the taxpayer. See Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 528-29, 197 A.2d 673 (1964).
In Hackensack Trust Co. v. Hackensack, 116 N.J.L. 343, 184 A. 408 (Sup.Ct.1936), the court was confronted with statutory language similar to the language in § 8(w). The issue in Hackensack Trust Co. was whether the statute, which subjected to tax the capital stock of banks and trust companies, permitted, in the computation of the assessable value of the stock, a deduction of the assessed value of real estate owned by another corporation whose capital stock was owned by the bank or trust company being taxed. The applicable statute provided that the stock shall be valued by “adding together the amount of the capital, surplus, and undivided profits of such bank, banking association, or trust company, and deducting therefrom the assessed value of the real property of such bank, banking association or trust company....” 116 N.J.L. at 345, 184 A. 408 (emphasis supplied). The contention was that a wholly owned subsidiary holding record title to the real property was an agency or instrumentality of the bank; that such real property was in fact “the real property of such bank,” and thus, that the assessed value of the real property should be deducted in determining the value of the bank shares. In holding against this contention the court declared that
The common meaning of the phrase “the real property of such bank” is “the real property owned by such bank.” “Of” is used here, according to our interpretation in its possessive sense. In the construction of legislative acts words in common use are to be taken in their own ordinary signification. [Citations omitted]. None of the prosecutor corporations owns the real estate whereat its banking business is maintained, [at 346, 184 A. 408].
Plaintiff acknowledges that construing the word “of” to mean “owned by” is a plausible interpretation of the statute, but *139 offers no alternative construction. Webster’s New Collegiate Dictionary (1979), at 789-90, indicates no fewer than 19 different uses of the word “of.” However, it is apparent from a review of the various definitions that “of” was meant to be read in § 8(w) in its possessive sense. No other definition makes any logical sense in the context of the statute. Although a word may be susceptible of many definitions, an ambiguity arises only when there is more than one definition that is plausible when placed in context. That is not the case here. I find that the phrase “real property of organizations” as used in N.J.S.A. 54:32B-8(w) means “real property owned by organizations.”
Plaintiff further argues that even if the word “of” is taken to mean “owned by,” the statute is still ambiguous because the word “own” is susceptible of several meanings. Plaintiff equates ownership with the act of dedication of the land to public use, and asserts that because of the alleged ambiguity any reasonable construction favorable to the taxpayer should be adopted. This construction, plaintiff argues, results in an exempt status for the subject transactions. Plaintiff maintains that prior to the commencement of construction, by its acts it made an irrevocable offer of dedication by which the municipalities acquired sufficient rights to the streets and roads paved by plaintiff to qualify them as real property of the municipalities. However, should it be determined that such an offer, if established, does not invoke operation of the statute, plaintiff asserts that the municipalities impliedly accepted the offers of dedication before the paving was completed, thereby completing the dedication and rendering the roadways the real property of the municipalities.
Defendant contends that no less than full legal and equitable title to the property must be held by the municipalities before it can be considered to be owned by them. Since it has been stipulated that “the property on which the subcontract paving work was performed was all owned by the developers and general contractors at the time National Paving did the work,” and that “formal dedication to the municipality of the streets *140 upon which National Paving worked occurred after the completion of construction,”[2] defendant maintains that the roads were not the property of the municipalities at the time the work was performed, and § 8(w) does not apply.
This issue has not previously been addressed by the courts of our State.[3] Defendant relies on two out-of-state cases for the proposition that the municipalities must possess legal title to the property for the statute to apply. In Pizzagalli Constr. Co. v. Vermont Dep’t of Taxes, 132 Vt. 496, 321 A.2d 437 (Sup.Ct.1974), a construction company, through a wholly owned subsidiary, contracted with local public housing authorities to construct housing units on property owned by the subsidiary, and to sell the property to the authorities upon completion of the construction. The projects were undertaken pursuant to a plan of development known as “turnkey” construction. Under such a plan, a developer arranges for the construction of the project as provided in a contract of sale in which the local housing authority agrees to purchase the completed housing. The developer has title to the land and is prohibited from selling the property to anyone other than the local authority. See Northgate Constr. Co. v. State Tax Comm’n, 377 Mass. 205, 385 N.E.2d 967 (Sup.Jud.Ct.1979).
A sales and use tax assessment was levied -against the company for the materials and supplies incorporated into the buildings. An exemption was sought pursuant to a statute that exempted from tax:
Sales of building materials and supplies to be used in the construction, reconstruction, alteration, remodeling or repair of (A) any building structure, or *141 other public works owned by or held in trust for the benefit of any governmental body or agency .. . and used exclusively for public purposes.... [Emphasis supplied]
The company’s argument that the housing authorities were the “equitable owners” of the properties, and that such a status was sufficient to invoke the statute, was rejected.[4] The court held that in order to meet the ownership requirement for exemption, legal title must be in the governmental body, and that the interest of a vendee does not qualify. The court relied in part on the particular turnkey contracts, pursuant to which few of the ordinary attributes of ownership were found in the vendees. The vendees paid nothing until the buildings were completed and title conveyed; title to the land and improvements remained in the vendor until then; the vendor had to furnish a surety bond, and was solely responsible for completing construction, although paid nothing until completion; all risk of loss remained in the vendor until conveyance; all water rents, operating charges, current taxes and assessments were the responsibility of the vendor up to the date of conveyance, and the vendee had no right of possession until conveyance of legal title. Under these circumstances, and the fact that under Vermont law exemptions from taxation are strictly construed against the claimant,[5] the court could not say that the vendee housing authorities were the “owners” of the property within the meaning of the exemption statute.
In Northgate Constr. Co. v. State Tax Comm’n, supra, on facts and statutory language virtually identical to those in Pizzagalli, the same result was reached. The court stated that a determination of sales and use tax liability should be based on facts in existence at the time of the taxable transaction, and not on the *142 possibility of the occurrence of future events. If the project were never completed and delivered pursuant to contract specifications, the exemption would be inappropriate, noted the court.
These cases differ factually from the present matter in two respects: the nature of the exempt entity and the manner in which the property was transferred to it. Although it is not factually significant here, the exempt entities are municipalities rather than local housing authorities. Of more moment is the fact that here the property was dedicated to public use rather than conveyed by contract of sale. As plaintiff points out, an offer of dedication may be implied as well as express, and acceptance of that offer by the municipality may be indicated by conduct and need not be by adoption of an appropriate resolution. The turnkey contracts involved in the above cases expressly provided for conveyance of the property subsequent to the completion of construction. Consummation of the agreement by some form of “implied acceptance” by the housing authorities was not possible prior to that time.
In the present circumstances, although formal dedication did not occur until after construction was completed, an implied offer and acceptance prior thereto was conceivable. The analysis of the Vermont and Massachusetts courts is therefore not precisely applicable to this case. I find, in the context of this proceeding, that “ownership” of the property involved by the respective municipalities, for the purposes of N.J.S.A. 54:32B-8(w), occurred upon their dedication to public use. I find as well, on the authority set forth below, that the dedication of these properties may have occurred, by implication, some time prior to formal dedication. Therefore this court must decide whether an offer and acceptance of this property for dedication to public use had occurred at the time plaintiff performed the paving work herein involved.
Dedication is the “permanent devotion of private property to a use that concerns the public in its municipal character.” Velasco v. Goldman Builders, Inc., 93 N.J.Super. 123, 133-34, 225 A.2d 148 (App.Div.1966) The following excerpts from Cunning *143 ham and Tischler, “Dedication of Land in New Jersey,” 15 Rutg.L.Rev. 377 (1961), summarize the law of offer and acceptance of dedication in this State:
Dedication of land may be effected, at common law, by any conduct of the dedicator which manifests his intent to devote the land to public use. The conduct may consist of written or oral declarations of intent, or of other conduct from which the intent to devote the land to public use can be inferred.
It is often said that a common law dedication is not completed or consummated until it has been accepted by the public or by the public authorities empowered to act in its behalf. This is certainly true insofar as an acceptance is a prerequisite to the acquisition of any present right of use by the public and to the imposition of any duty upon the public authorities to maintain the area dedicated to public use. But in New Jersey, at least, the dedication is complete and irrevocable so far as the dedicator is concerned as soon as he has manifested his intent to devote the land to public use in praesenti. The dedication may never be accepted, but the power of acceptance continues indefinitely in the general public and in the authorities who represent the public.
Dedication depends almost entirely upon common-law principles in New Jersey. Common-law dedications may be either express or implied. An express dedication is ordinarily effected by a deed of grant manifesting the grantor’s intent to devote land therein described to public use, but it may arise from any written declaration of intent to devote land to public use, or even from an oral declaration of such intent. An implied dedication arises from conduct of the dedicator which falls short of any express statement of intent to dedicate but which nevertheless manifests an intent to dedicate land to public use.
In other states it seems generally to be held that the intent to dedicate land to public use must be clearly and unequivocally manifested. In New Jersey, however, the intent to dedicate has almost invariably been treated as a question of fact — or “mixed law and fact” — to be resolved in the same way as any other such question.
One of the most common instances of implied dedication occurs when a real estate developer plats a tract of land into building lots and prepares a map disclosing streets abutting such lots within the tract owned by the developer. If the developer subsequently conveys at least one lot by reference to the map, an intent to dedicate the streets shown thereon will be conclusively presumed, in the absence of anything in the deed which manifests a contrary intent. The same rule applies when the developer conveys lots by reference to a map which shows areas marked as markets; squares, parks, or recreational areas; or school sites. The rule seems to rest in part upon the view that such action, by implication, manifests the landowner’s intent to dedicate, and in part on the theory that the purchaser’s action in reliance on such manifestation of intent precludes the landowner from later asserting that he did not intend to dedicate areas marked as streets, squares, parks, etc., to public use.
*144 An “offer” to dedicate land to public use, as previously indicated, is generally held to be irrevocable in New Jersey, but the dedicator may use the land as he pleases until the “offer” is accepted. Until there has been an acceptance, the public acquires no right of user and assumes no duties with respect to dedicated land. Of course, the public is not under any duty to accept a dedication of land.
A municipality may, and often does, formally accept a dedication by an appropriate ordinance or resolution of its governing body. But a dedication may also be accepted by other official conduct of public authorities which manifests the intent to treat the land in question as dedicated to public use. Thus the assumption of control over the subject matter of the dedication by the public authorities constitutes an acceptance. Bringing an action for possession of the dedicated land, or any action in which the municipality alleges that the land in question has been dedicated to public use will also constitute an acceptance, [at 381-87, 395-98; citations omitted].[6]
See, also, Velasco v. Goldman Builders, Inc., supra 93 N.J.Super. at 133-35, 225 A.2d 148; Kiernan v. Primavera, 109 N.J.Super. 231, 262 A.2d 910 (Ch.Div.1970).
Plaintiff urges that an offer of dedication alone is sufficient to transfer ownership to the municipality for purposes of § 8(w). I cannot accept this contention for two reasons. First, plaintiff offers no authority, and the court is aware of none, for the proposition that an unaccepted offer of dedication conveys any rights to, or places any responsibility on, the municipality with regard to the property. The authorities are clear that an acceptance must occur for a dedication to be complete. Plaintiff is correct when it submits that once an offer is made, the dedication is complete and irrevocable as far as the landowner is concerned. However, plaintiffs conclusion that “even in the absence of municipal acceptance of dedication upon offer of dedication, the municipalities acquired sufficient right to the streets paved by National Paving under subcontract to qualify those streets for classification as ‘real property of organizations described in [§ 9(a)(1)],’ ” has no support in the law. An acceptance is as essential to the consummation of a dedication as it is to the formation of a contract.
*145 In any event, it is difficult to make a determination with respect to an offer of dedication in this case. The alleged dedicators are the developers and general contractors with whom plaintiff contracted to perform the paving work. They were the owners of the property prior to the dedication. In order to determine whether an offer of dedication was made, since “the dedication of private lands to public use [is] essentially a matter of intent, in assessing the quality thereof the court should concern itself not with intentions that remain unrevealed but with those evidenced by the acts or conduct of the dedicator.” Velasco v. Goldman Builders, Inc., supra 93 N.J.Super. at 134, 225 A.2d 148; Haven Homes, Inc. v. Raritan Tp., 19 N.J. 239, 246, 116 A.2d 25 (1955). All that the record in this case reveals concerning the developers and general contractors is that they were required to post performance bonds for the building projects, naming the municipalities as beneficiary. The bonds could not be released unless the work was acceptable to municipal authorities. From these facts alone the intent of the owners to dedicate the streets and roads to public use cannot readily be ascertained.
However, because the court believes that the offer of dedication, if made, was not accepted by the municipalities at the time the paving work was done by plaintiff, it will be assumed, for purposes of argument, that an effective offer was made.
Formal acceptance of the dedication of these properties occurred after the paving was completed. If other than formal acceptance by resolution or ordinance occurred prior to that time, it is to be tested by the conduct of the municipal authorities that manifests an intent to treat the land in question as dedicated to public use. State v. Birch, 115 N.J.Super. 457, 464, 280 A.2d 210 (App.Div.1971); Sarty v. Millburn Tp., 28 N.J.Super. 199, 205, 100 A.2d 309 (App.Div.1953); Cunningham and Tischler, supra at 396-97. Cunningham and Tischler note ten cases in which acceptance of a dedication was found by municipal conduct short of adoption of a formal resolution. Among the forms of control over the subject property deemed to constitute acceptance were the following: municipal proceedings to *146 “open” a street; passage of an ordinance authorizing a street railway company to lay tracks in a dedicated street at public expense; improvement of a dedicated beachfront for use as a public boardwalk; construction of drains at municipal expense; provision of municipal services such as lighting, police and cleaning; order of city council to remove fence obstructing a dedicated street; connecting a sanitary sewer in a dedicated street to the municipal sewer system, and conversion of dedicated land into a park and maintaining it as such. Id. at 397, n.108.
In the present case we have the following: performance bonds posted by the developers and general contractors naming the municipalities as beneficiaries; the bonds could not be released unless the work was acceptable to municipal authorities at the time the streets were to be formally dedicated; inspections of the paving work, and the filing of written reports to the municipalities, by municipal architects, engineers and inspectors; and the plaintiff billing and being paid by the developers and contractors for whom it worked and not by the municipalities in which the streets and roads were located.
It is apparent that the only municipal involvement herein was of a supervisory nature to ensure that the paving work performed by plaintiff met applicable construction standards. If the paving proved to be unsatisfactory, the municipalities were free to reject the work and even refuse to accept the streets for public use. Nothing in the record indicates that the municipalities were committed to accepting the streets prior to the adoption of a formal resolution to that effect. We have here none of the forms of dominion and control over the property noted by Cunningham and Tischler, supra, that have been held to evidence an intention to accept an offer of dedication. In addition, the municipalities had few, if any, of the ordinary attributes of ownership at the time the paving work was done. See Pizzagalli Constr. Co. v. Vermont Dep’t of Taxes, supra. Title to the land remained in the developers, the land remained private property, and the public had no right to use the property until the roadways were formally dedicated. The developers and general contractors were solely responsible for financing *147 and completing the construction projects, and, apparently, all risk of loss or damage to the property, including those areas eventually to be in the public interest, was assumed by the developers and contractors.
I find, under all the facts of this case, that the property upon which plaintiff performed the paving activities had not, at the time of paving, been accepted by the municipalities for dedication to public use. As a result, the streets and roads were not the “real property of” the municipalities at that time, and plaintiff is not entitled to an exemption from sales and use tax pursuant to N.J.S.A. 54:32B-8(w).[7]
Judgment shall be entered by the Clerk of the Tax Court affirming the assessment of the defendant, Director, Division of Taxation.

Defendant’s brief states that “the various municipalities may have been exempt organizations” (emphasis supplied), but does not argue that the municipalities fall outside the reach of N.J.S.A. 54:32B-9(a)(l). Although “political subdivision” is not defined in the Sales and Use Tax Act, it is clear that the municipalities are political subdivisions of the State of New Jersey and qualify as exempt organizations within the meaning of the statute. Accord, N.J.S.A. 52:27BB-2.

The stipulation of facts submitted by the parties does not indicate what constituted “formal dedication.” Presumably formal dedication occurred upon the adoption of an appropriate ordinance or resolution by the municipal governing body. The briefs indicate that both parties viewed “formal dedication” in that manner.

Apparently the only reported decision dealing with N.J.S.A. 54:32B-8(w) is Mal Bros. Contracting Co. v. Taxation Div. Director, 124 N.J.Super. 55, 304 A.2d 750 (App.Div.1973), certif. den. 63 N.J. 554, 310 A.2d 469 (1973). That case does not offer any guidance on the issues posed herein.

A claim that the properties were “held in trust” for the benefit of the authorities was also rejected. Since the New Jersey statute does not extend to property “held in trust” for the designated entities, the Vermont Court’s decision in this regard will not be reviewed.

The same general rule applies in New Jersey. See Mal Bros. Contracting Co. v. Taxation Div. Director, supra 124 N.J.Super. at 61; In re Kuebler, 106 N.J.Super. 13, 17, 254 A.2d 115 (App.Div.1969).

There is no statutory law of dedication applicable to this case. But see N.J.S.A. 40:67-1(b). -19; 40:179-91.

Paragraph 11 of the stipulation of facts provides in part that “at all times material to this litigation, National Paving acted in the good faith belief that the transactions in question were exempt from the compensating use tax under the foregoing state of facts.” This fact cannot change the result in this case. Cf. General Trading Co. v. Taxation Div. Director, 83 N.J. 122, 416 A.2d 37 (1980).