EDWARD C. ROBERTSON et al.

*v.*

LEOPOLD MEYER et al.

[Filed March 29th, 1900.]

Where, in an action to enjoin defendants from using complainants' private court as an access to defendants' property, there is no substantial evidence of any right in defendants to use the court, and damages at law would not be an adequate remedy, complainant will be granted an injunction without being sent to law to establish his legal rights.

On bill for injunction. On final hearing on bill, answer, replication and proofs.

*Mr. Corra N. Williams* and *Mr. Robert H. McCarter*, for the complainants.

*Mr. James R. Nugent* and *Mr. Samuel Kalisch*, for the defendants.

EMERY, V. C.

The substantial question involved in this case upon the pleadings is whether a certain open court-yard, about one hundred and fifty feet long by thirty feet wide, of which complainants are the owners in fee, has been dedicated to the public as a highway or street. Access to the court from the public street is through a twelve-foot alley, which opens into the court on its southerly side and runs from Green street, in the city of Newark, and on the north side of the court, opposite to the entrance from the alley, a row of dwellings (twelve in number) are located, extending from the west side of the court along the whole north side, up to the line of factory buildings which are erected on the north and on the east side of the court. These factory buildings also extend on the south side of the court as far as the east side of the alley and for about thirty feet along

the alley. Complainants are the owners in fee of the alley for this distance. These factory buildings and the houses were all built by the predecessor in title of complainant, and the court was originally laid out about 1850 by the then owner of the premises, in connection with the buildings and for the use of these dwellings and factories. The court-yard was paved some years subsequently, presumably by the owner, as the city has never taken charge of it for such purpose. On the west side of the alley a factory building was also erected by the complainants' predecessor in title, and the alley was used for entrance to the latter building, but access to the court.for this building was (with the exception of two or three years, as hereafter mentioned) prevented by the erection of a fence along the south side of the court, west of the alley. Defendants are the owners of land fronting on Green street, about sixty feet west of the alley and running back beyond the court, the boundary between complainants' and defendants' property being the west line of the court-yard and of the row of dwellings. From at least as early as 1860, up to November, 1898, a fence existed along this west line of the court-yard, and coal-bins for the use of the tenants of the factory, on complainants' property, were built against this fence as early as 1864 and remained there until they rotted down with it in twelve or fifteen years. Defendants, in erecting a factory building on their lot, in November, 1898, removed the fence along the west line of the court-yard, and upon the complainants thereupon erecting another fence across the west end of the court, about two feet east of the line of the old fence and entirely upon their own lands, the defendants forcibly destroyed the fence.erected by complainants, and since the completion of their building have, without complainants' consent and against their protest, used the court for access to the rear of their factory, with horses, wagons, &c. Defendants' sole claim to exercise this right over the court for access to their factory rests upon its dedication to public use as a public street or highway, and the issue between the parties on the pleadings is whether the court has been so dedicated.

On the application for preliminary injunction, I held that

while there was no sufficient reason for a preliminary injunction, yet inasmuch as defendants were using, and by their answer claimed the right to use, the court, and to use it continually in a burdensome way, for which an action for damages at law would afford inadequate relief, the injury was of a character which would justify this court in giving relief without sending complainants to first establish their rights at law, unless the evidence produced on the hearing showed such a substantial dispute over the fact of dedication to public use as to entitle defendants to a trial by jury. This rule as to the jurisdiction of the court in cases of the present character, was declared by the court of errors and appeals in *Hart* v. *Leonard, 15 Stew. Eq. 416, 419,* and it is specially applicable where the objection to the jurisdiction of this court is not raised by defendants' answer, and the question of jurisdiction cannot be ruled on until after the evidence on both sides has been taken on final hearing. In *Bailey* v. *Schnitzius, 8 Dick. Ch. Rep. 235 (Court of Errors and Appeals, 1895),* an injunction against obstructing a water course was granted, at final hearing, without settling right at law, where, on the admitted facts proved by defendant, the complainants' right was clear. A preliminary injunction had been refused in this case. *Ibid., 18 Stew. Eq. 178.*

Upon the evidence offered at the hearing I conclude that there is no such substantial dispute and that complainant is entitled to an injunction without further establishing his legal rights.

In the first place, the precise question in issue is the right of the defendants to use the court as a public highway for access to their property on the west side of the court. This property, up to the time of the removal by the defendants in November, 1898, of the fence along the boundary line, had been kept shut off from public or other access by a fence, which is proved to have been erected by complainants' predecessor in title, the owner of the court, as early as 1860, and also by coal-bins erected against the fence as early as 1864, for the use of the tenants of the factory on the east side of the alley. By this enclosure on the west, and also by a similar enclosure on the south of the court, the owner who erected them negatived, as far as it was

possible for him to do so, the intention to dedicate the court as a public highway for access to properties other than his own buildings.   So long as these obstructions to access to the property on the west continued, the owners of the court are entitled to the benefit of this original exclusion of access to defendants' lands, in the absence of evidence sufficient to show that notwithstanding this exclusion, the public use has been such as to show the intention to dedicate the court as a public street entirely across the west line.   The effect of such erection obstructing or enclosing a street or court opened by an owner in connection with the use of dwellings built on his own land is discussed in *Woodyear* v. *Hadden, 5 Taunt. \*125 (1813)*, a case in many points similar to the present.   In that case the plaintiff laid out a street leading out of a highway across his own lands and terminating at defendant's lands, on which there was a fence erected by defendant, and which continued to separate the end of the street from defendant's lands for twenty-one years.   Defendant pulled down his fence and claimed use of the street laid out on plaintiff's land as a highway dedicated to public use, basing his claim on the public use for access to the houses which had been built on the street and plaintiff's lands.   Lord Mansfield says, on this point (at *p. 141*): "It is admitted that if the plaintiffs themselves had built another wall at the extremity, they would have been safe,   *   *   *   but I have great difficulty to see why the plaintiffs should build another fence when there was a fence already there."

The erection of this fence along the west line and its maintenance until removed by defendants, in 1898, is conclusive in this case, between the owners of the respective lands, as to the intention to dedicate the court as a highway to defendants' property. The court, not being a thoroughfare, can only be considered dedicated to public use up to the line where it was used and not beyond it, and no evidence has been offered sufficient to overcome the effect of this erection or to deprive complainants of its benefit.

Second, the evidence offered by defendants as to the use of the court-yard shows substantially only a use in connection with

Robertson *v.* Meyer

the dwellings and factories on complainants' lands, for whose use it was laid out. No use whatever, either for reaching or passing defendants' lands, has been shown, and the only general use of the court claimed to have been shown other than that of persons visiting or serving the dwellings or factories, is that of peddlers or hucksters, who drove into the court to sell their wares, and of persons who came through the alley and crossed the court to draw water from a pump located in front of one of the houses opposite the alley. A special use was shown of the court-yard for two or three years, by a tenant of the factory on the west side of the alley, who took out a section of the fence which stood along the south side of the court, and cut off access to his factory, and who used this opening for access to the leased premises from the court. But it appears also that one of the complainants made objections to the landlord about this action of his tenant, and that on the tenant's removal the section of the fence was rebuilt by complainants without any objection from the owner of the factory. This special use, therefore, cannot be considered as evidence tending to establish a dedication of the whole court on the west to public use, nor can the use of the court-yard at the entrance of the alley, for the purpose of turning the wagons which came to the factory, be considered as such evidence. The maintenance and lighting by the city of a lamp at the entrance of the alley into the court-yard, and the collection by the city scavenger of garbage and ashes from boxes in the court-yard or alley, also relied on as public uses, are, I think, manifestly to be considered rather as uses of the court in the way of police regulations, and are not uses of a character to create a dedication to the public even as to the portions of the court where these uses were exercised, and they certainly afford no evidence of dedication of the court up to and across the defendants' line. Nor does the designation of the locality as Maple Place, by sign on the alley at Green street, and its similar designation on a map made, in 1856, by the commissioners to lay out streets, afford any sufficient evidence of dedication. Complainants and their predecessors in title had nothing to do with the making of this map, and it was not made for the purpose of settling questions such as arise in this

suit. The city has not in any way accepted the court as a street or assumed control over it. Giving to the defendants' evidence the full weight and effect it would be entitled to if standing alone in the case, I reach the conclusion that the uses shown, except so far as they may be considered as mere licenses for neighborly accommodation (such as getting water from the pump), are merely uses which are properly referable to private ways in connection with the houses and are not such general and undisputed public uses of the court for access to all of the property around the court, as is sufficient to overcome the evidence negativing or excluding dedication, supplied by the erection and maintenance of the fence along defendants' property.

Upon the question of the effect of defendants' evidence, the position of defendants is that the question of dedication is one of intention, which is a mixed question of law and fact, and therefore defendants are entitled to have the question submitted to a jury. If they have not waived the right by failure to set it up in proper time, they might have such right, if upon the whole evidence they show a case, upon which a jury, giving their evidence its full weight, would be entitled to find a dedication. But if the case as to dedication presented by defendant is such that no disputed questions of law are involved and the evidence is such that a court of law would direct a verdict for the plaintiff, or set aside a verdict for defendant, as without evidence, then I think it must be said that no substantial dispute as to the right has been shown, and that this court has jurisdiction to give an injunction without requiring complainants' title to be established at law. A court of law will direct a nonsuit or set aside a verdict in cases where there is no evidence to warrant a finding of dedication. *O' Neill* v. *Annett, 3 Dutch. 290 (1850)*.

Third, the injury suffered by complainants in this case is one for which damages at law are not an adequate remedy. The only damage recoverable at law is for the injury to the complainants by the passage across an open court, which complainants are obliged to keep open for the use of the tenants of their dwellings. They cannot in this case protect their property rights from infringement by defendants by closing up the whole court. The damages recoverable at law being based, as they must be, on the

damage to the plaintiffs and not on the profit to defendants, would be nominal, and the only object of an action at law would be to settle a right to be protected finally by injunction. The real injury in this case is the appropriation of· complainants' property without compensation for the defendants' profit and convenience and in a burdensome.way. Upon the evidence of dedication here presented, the complainants should not be required to bring suit for nominal damages in order to settle the question of legal title, but their rights not being contested on any substantial basis, they are now entitled to relief by injunction.