59 N.J. Super. 445 (1960)
158 A.2d 62
FRANK RIVERA, AN INFANT, BY HIS GUARDIAN AD LITEM, JUSTO RIVERA, ET AL., PLAINTIFFS-APPELLANTS,
v.
COLUMBUS CADET CORPS OF AMERICA, A CORPORATION, ETC., ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 18, 1960.
Decided February 5, 1960.
*447 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. Solomon Lubow argued the cause for appellants (Messrs. Chazin & Chazin, attorneys).
Mr. Samuel A. Larner argued the cause for respondents (Messrs. Budd, Larner & Kent, attorneys).
The opinion of the court was delivered by HANEMAN, J.A.D.
Plaintiffs Frank Rivera, an infant, by his father and guardian ad litem, Justo Rivera, and Justo Rivera individually appeal from an involuntary dismissal granted in favor of defendants Columbus Cadet Corps of America (Columbus), a corporation of New Jersey, and Frank Farrell.
*448 On July 25, 1956, the infant plaintiff, then 12 years of age, became a camper at the summer camp operated by Columbus. On July 26, 1956 about one-half hour after "lights out" the lights and the radio of the cabin to which plaintiff had been assigned went on and the boys engaged in a general melee involving loud noises, the throwing of pillows and towels and other similar conduct of harmless horseplay. No counselor or other person in a supervisory capacity was present in the cabin at the time.
After this disturbance had continued for about one-half hour, defendant Frank Farrell, the camp director, entered the cabin and shouted "Freeze." In response to his command, every boy stopped in the position in which this command found him. Plaintiff noticed that the boy from the upper bunk across the aisle had a pillow in position to throw at him. Frank Rivera testified, "He was standing right over me."
As punishment for their misbehavior, Farrell informed the boys that they would have to clean up the cabin the next morning and that there would be no regular camp activities for them until that task was completed. The boys then returned to their beds and all was quiet for the rest of the night.
The following morning, after religious services and breakfast, Jack Kirkwood, counselor for plaintiff's cabin, ordered a few of the boys, including plaintiff, to distribute the necessary cleaning equipment. Plaintiff placed the only broom in the cabin on the upper bunk across the aisle from his own, at the feet of the boy who slept in that bunk. In reply to the question, "And the boy at that time was lying in his bunk asleep, you say?" plaintiff stated, "He refused to work."
Plaintiff then sat down on his lower bunk in order to tie the laces in his sneakers. As he got up, he saw the broom coming at him out of the corner of his eye. "It came at me with terrific force, and it felt like somebody taking it and just giving you a shot in the eye." The broom handle *449 hit plaintiff's left eye, piercing his glasses and causing severe damage to the eye. The boy in the opposite bunk was not called to testify and neither plaintiff nor any witness produced in the case was able to testify how the broom was set in motion so as to come into contact with plaintiff's eye. No one in a supervisory capacity was in the cabin at the time of the accident. The counselor was "playing basketball, or something like that."
At the close of plaintiff's case, Columbus and Farrell moved for an involuntary dismissal, which the court granted on the ground that there was not sufficient evidence upon which the jury could reasonably differ and find wrongdoing on the part of either defendant.
Defendants admit that they owed the infant plaintiff a duty of due care to prevent injury to him. They deny, however, that plaintiff has presented any evidence from which a jury could reasonably find either negligence or proximate cause.
It is axiomatic that a court may not weigh the evidence on a motion for involuntary dismissal, but must accept as true all evidence which supports the view of the party against whom the motion is made and give him the benefit of all legitimate inferences which might be drawn therefrom in his favor. Shellhammer v. Lehigh Valley Railroad Co., 14 N.J. 341, 345 (1954). The power of the trial judge to grant such a motion is not, however, restricted to an utter absence of all evidence of a contradictory purport. The "mere scintilla of evidence rule" does not prevail in New Jersey. Layton v. Healy, 12 N.J. Super. 459 (App. Div. 1951). An inference can be drawn only from proved facts and cannot be based upon a foundation of pure conjecture, speculation, surmise, or guess. 32 C.J.S. Evidence § 1044, pp. 1131, 1132 (1942).
"[A]n inference of probability of a defendant's responsibility in a negligence case, as distinguished from the mere possibility, is *450 required to make out a case sufficient to withstand a motion for judgment." Mijon v. Acquaire, 51 N.J. Super. 426, 441 (App. Div. 1958).
Negligence is never presumed, Oelschlaeger v. Hahne & Co., 2 N.J. 490 (1949), and the mere occurrence of an accident causing injuries is not alone sufficient to justify an inference of negligence. Callahan v. National Lead Co., 4 N.J. 150 (1950).
Defendants' negligence in the case sub judice, contend the plaintiffs, stems from their failure to supervise the cleaning-up detail on the morning of July 27th. They maintain that the disturbance in the bunks on the night of July 26th should have put defendants on notice of the dangerous proclivities of this group of boys.
In the recent case of Doktor v. Greenberg, 58 N.J. Super. 155 (App. Div. 1959) the court was presented with a similar foreseeability problem. A school teacher, posted in the corridor to supervise the passage of students, was charged with negligent supervision of her students. During a lunch hour change of classes, plaintiff was punched while in the hall on his way to a classroom "for no reason at all" by another student, Joyce, who had been "a `discipline problem'" but had not previously displayed assaultive propensities. In return, plaintiff tapped Joyce's shoulder with the back of his hand and, thinking the incident ended, continued on his way. As he was about to enter the classroom, plaintiff was pushed from behind by Joyce and fell against a nearby desk. At this time the teacher was not supervising the hall activities, but had entered her classroom. The court assumed, for the purpose of the case before it, that the teacher had seen the first incident in the hallway. The court said, at page 159:
"The focus is therefore on whether responsible minds could differ in appraising the reasonableness of defendant's conduct in failing to act to prevent the second attack."
In reply to plaintiff's contention, not unlike that in the instant case, that the teacher should have remained in the *451 hall so that her mere presence would have provided a deterrent effect, the court continued:
"Our judgment is that reasonable men could not conclude that there were circumstances which should have alerted Miss Rothberg to the necessity of exercising any control over Joyce. It is clear that at least several moments elapsed between the exchange of blows in the corridor and the pushing incident at the doorway. * * * Miss Rothberg could not, therefore, have foreseen any further conflict. * * *
"In sum, the case is absolutely barren of evidence to show that defendant knew or should have known that Joyce was going to push the infant plaintiff."
Likewise, in the case sub judice, the incident of the previous night had apparently ended and the need for closer supervision of the boys thereby became non-existent. It is commonly known that "boys will be boys," and that there is nothing unusual about a pillow fight or other similar disorder in the cabin of a summer camp at night. There is no evidence that these boys had any physically aggressive or vicious tendencies or intended to flout authority but, to the contrary, when Farrell appeared and shouted "Freeze," all activity ceased and the boys calmed down and went to sleep. This typically boyish disorder on the evening of July 26 clearly was not sufficient to have warned defendants that the boys in plaintiff's cabin required special watchfulness while executing the clean-up detail assigned to them the next morning as against the foreseeability of any hazard that one of them might negligently or intentionally injure another.
In Goldberger v. David Roberts Corp., 139 Conn. 629, 96 A.2d 309 (Sup. Ct. Err. 1953), a 12 year old plaintiff, while lying on his bunk during the rest hour before lunch, was injured by a paddle being swung around by another camper, Salke, who, incidentally, was a "problem child." The counselor was not present in the tent at the time. The court said, 96 A., at page 310:
*452 "It was [the counsellor's] duty to have general supervision of the boys in his tent but not to be with them all of the time. That would be not only virtually impossible but also unwise, because the youngsters should be allowed to develop a sense of responsibility and have opportunity to discuss matters among themselves."
If plaintiff's contention were correct, it would mean that the mere unruliness of a normal group of boys on one occasion in a classroom or in the cabin of a summer camp would impose the duty upon the teacher or counselor to be in immediate attendance upon them for an indefinite period thereafter. Such a result would be both unrealistic and unreasonable. The fact that plaintiff herein was injured during a punishment detail does not add weight to his position. He makes the flat, completely undocumented and unfounded assertion that punishment brings to the breast of boys "resentment, anger, stirrings of rebellion, and carelessness, recklessness, disobedience and a host of other emotions, reflecting their antagonism to authority." There is no evidence in this case that defendants should have reasonably anticipated that this group of boys would become rebellious to the point of physical danger to one of their number when ordered to clean their cabin following a completely normal incident of "blowing off steam." The punishment was not unduly harsh and should have been expected by the boys who had upset their cabin the night before. It is common knowledge that it is a regular activity in many camps to clean the cabin in the morning before the campers can participate in other activities.
We have considered plaintiffs' contentions regarding excluded expert testimony and we find them to be without merit.
Due to our findings on the issue of negligence, it becomes unnecessary to pass upon the question of proximate cause raised by defendants.
Affirmed.