93 N.J. Super. 123 (1966)
225 A.2d 148
FLORENCE VELASCO, ET AL., PLAINTIFFS-APPELLANTS,
v.
GOLDMAN BUILDERS, INC., ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 1966.
Decided December 13, 1966.
*126 Before Judges GAULKIN, LEWIS and LABRECQUE.
Mr. Francis C. Foley argued the cause for appellants (Mr. William H. Gazi, of counsel and on the brief).
Mr. Charles Handler argued the cause for respondents Paul Goldman, individually; Goldman Builders, Inc., and Parsons Associates, a joint venture.
Mr. John E. Toolan argued the cause for respondents Sommers Bros. Construction Co., Sigmund Sommers, Abraham Sommers and Viola Sommers (Messrs. Toolan, Haney & Romond, attorneys).
Mr. Christian J. Jorgensen (by Mr. Ned Jaycox Doyle), attorney for respondent Township of Edison, filed a letter that it relied upon the briefs submitted by co-respondents.
No appearances made or briefs filed for respondents Furman-Wolfson Corporation; George Thompson, Building Inspector, Township of Edison; Township of Woodbridge.
The opinion of the court was delivered by LEWIS, J.A.D.
Plaintiffs, 47 in number, instituted proceedings in the Chancery Division to prevent the closing of an alleged public right of way. The complaint was dismissed at the close of their case, and judgment was entered in favor of defendants. Plaintiffs appeal.
*127 The general area involved in this litigation is bounded on the north by the Port Reading Railroad tracks, on the south by New Jersey State Highway 25 (U.S. 1), on the east by the Garden State Parkway, and on the west by Roosevelt Park and the Menlo Park Shopping Center. The easterly section of the tract is in Woodbridge Township; the westerly part is in Edison Township. The boundary line separating those two municipalities extends roughly north to south. The Edison portion is bisected by Parsonage Road, which also follows a general north-south course.
It appears from the record that defendants Sommers brothers and their various company entities, now represented by trustees in dissolution (herein Sommers), in 1954-55 developed a residential project of approximately 800 houses, known as Menlo Park Terrace, on that portion of the tract located in Woodbridge.
The development plot plan reveals a grid-type layout of roads, with Menlo and Ford Avenues, running north-south, merging at right angles with the state highway (hereinafter Route 1). Several east-west streets dead-end abruptly at or near the western boundary of Woodbridge including McGuire Street, which is the sixth street north of and parallel to Route 1; they are intersected by the afore-mentioned north-south avenues. The construction yard for the project was located adjacent to Route 1, and Ford and Menlo Avenues were utilized by the construction crew as the main access roads to the development during the building activities.
A sample house was erected by Sommers on McGuire Street approximately 50 feet east of the Edison-Woodbridge dividing line, and from thence the street was extended approximately 1,400 feet westward through wooded lands in Edison, owned by Sommers, to Parsonage Road. McGuire Street as extended was the only means of direct public ingress and egress to and from the development from the west and continued as such until 1965, when it was closed.
About five or six years after the completion and sale of the houses, Sommers built the Menlo Park Shopping Center on *128 that portion of their land in Edison west of Parsonage Road. They also constructed a commercial building (the Montgomery Ward Tire Shop) on the east side of that road at the approximate location where it was joined by the McGuire Street extension. Incident to the construction of the tire shop the McGuire Street entrance to Parsonage Road was relocated approximately 200 feet south of its original situs and followed a delineated course which included passage over a paved parking area of the tire shop.
In 1964 Sommers sold their interest in the shopping center, and the tire shop with its immediately adjacent lands, to defendant Furman-Wolfson Corporation, and the parties provided for a "perpetual street easement" in favor of Sommers with respect to the McGuire Street extension.
The following year defendant Paul Goldman, a builder and engineer, on behalf of corporations and a joint venture in which he had interests (herein Goldman) concluded negotiations, commenced in 1963, for the purchase of Sommers' remaining property in Edison, including the woodlands through which McGuire Street had been extended to Parsonage Road. The new owners then submitted a proposal to the Edison Township Planning Board for the construction of a 592-unit garden apartment development adjacent to Menlo Park Terrace. The Goldman plan contemplated a discontinuance of McGuire Street from the Woodbridge boundary line to Parsonage Road. A building permit was issued on November 22, 1965 and, on the same day, the McGuire Street extension was closed.
The pending suit, instituted on December 2, 1965, was precipitated by the closing of that right of way. Plaintiffs, with one exception, were home owners and residents in Menlo Park Terrace. They maintain that McGuire Street, a dedicated and accepted thoroughfare in Woodbridge, is a public right of way extending across the Woodbridge boundary, westward through the lands of Goldman in Edison, to Parsonage Road; the same was used as a public street from 1954 to 1965, and Sommers and their successor in title, Goldman, are estopped *129 from asserting against plaintiffs that the McGuire Street extension is a private road. They sought by their complaint (1) to restrain Goldman from constructing an apartment project that would interfere with the continued use of that alleged public right of way; (2) to rescind the aforesaid building permit, and (3) to recover punitive damages for fraud.
Mrs. Adeline Lofstrom, one of the plaintiffs, testified, in substance, that she resided at 58 McGuire Street; she and her husband purchased a house at that address in 1954; they were attracted to the Menlo Park Terrace development through newspaper advertising, and their homesite was selected from a map at the sales office in the model house on McGuire Street. She further testified that she was told by Sommers' salesmen that there would be a large shopping center on the west side of Parsonage Road which could be reached by walking "straight down our street and we were on McGuire Street." In describing that street as it existed on her first visit to the development she said: "It was a paved, blacktop road extending from Parsonage Road straight, curving just previously to the model home, then straightening out again," and when asked, "What use has been given to McGuire Street between your home and Parsonage Road since you have moved there in 1954?", she replied:
"Pedestrian traffic, cars, trucks, delivery service from United Parcel and many other services along with the mail truck. Two buses of Suburban Transit, school buses from St. Cecilia's and the cerebral palsy school bus. * * *"
Six other plaintiffs gave evidence substantially to the same effect as that given by Mrs. Lofstrom. There was testimony that the maps displayed at the sample house showed McGuire Street as extended from the development to Parsonage Road. The original maps used in the selling program were not produced; according to the deposition of defendant Abraham Sommers, they are not in existence. However, a copy of the "Plot Plan of Menlo Park Terrace," filed with the county clerk in June 1953, was received in evidence. Although it only embraced the development in Woodbridge, we note that *130 the peripheral lines of McGuire Street project across the municipal boundary. It is clear from the exhibits and testimony that neither the deposit receipts nor the purchase contracts mentioned a filed plan, but a reference thereto was made in the deeds. The parties stipulated, during the trial, that the same forms of contracts and deeds were used in all sales and that none of those instruments made an express reservation of an easement or right of way with respect to the extension of McGuire Street.
Copies of the advertisements referred to by the witnesses were admitted in evidence. They directed prospective purchasers to the premises via Parsonage Road and, in bold print, employed language such as: "Menlo Park Terrace Homes  Off Parsonage Road Next to Roosevelt Park." The evidentiary exhibits included, inter alia, a reprint of a 1956 geodetic survey published by the United States Department of the Interior which depicts McGuire Street as a "lightduty" road originating in the easterly section of Menlo Park Terrace and continuing westward to Parsonage Road. Also two aerial photographs, dated April 2, 1962, were produced through Charles Beagle, a professional engineer and custodian of the municipal engineering records. They were taken for the purpose of photogrammetry of Woodbridge and plainly show the existence of a roadway from Parsonage Road connecting with McGuire Street in the development. The witness identified the roadway as "a traveled way or a street that was used by the general public," and stated that it was known locally as the "extension to McGuire Street."
It was demonstrated by the testimony of several witnesses that for a period of approximately nine to ten years after Menlo Park Terrace had been developed there were no signs or notices of any type indicating that the McGuire Street extension was a private road or the subject of a revocable easement. The first appearance of any sign occurred sometime in 1964 or 1965. The sign was characterized as "a little sign posted on the cyclone fence at Montgomery Ward." It reads:

*131 "PRIVATE PROPERTY

Permission To Pass Over Revocable At Anytime."
It bears no identification as to who erected the notice or whose private property was involved.
Frank Saflarske, a school bus driver, testified that three school buses traveled the McGuire Street extension, making a total of 12 trips daily, and that he drove one of the buses for 10 to 12 years prior to the closing of the extension in 1965. He further stated that at the close of the school session in 1965 "there was a sign put up at the corner of the parking lot that this is private property. Now whether that pertained to the street or parking lot, I don't know." He knew of only one occasion when the road was blocked off. There was evidence that the extension street was closed on two or three occasions between 1954 and 1965 for repairs, cleaning work and an auction of equipment after the construction of the shopping center.
The proofs regarding repairs were meager. Oscar Kaus, the municipal clerk of Edison, acknowledged that complaints made to the township were referred to its Department of Public Works. He maintained that when inquiries were made of him concerning disrepair, he replied that the McGuire Street extension was not the responsibility of the township. Sommers deposed that the developers made no repairs to the right of way in question after the project was completed.
Kaus produced copies of two township resolutions. One, adopted March 27, 1957, consented to and granted the intrastate application of Plainfield Transit, Inc. to operate buses on various streets, including "Parsonage Road to McGuire Avenue, turning right on McGuire Avenue, thence * * * on McGuire Avenue to the Edison Township-Woodbridge Township border line." The other resolution, adopted June 27, 1962, consented to and granted the interstate application of Suburban Transit Corp. to operate 25 buses through Edison *132 on designated routes, including "Parsonage Road to McGuire Avenue; thence along McGuire Avenue to the Edison Township-Woodbridge Township line." Under cross-examination, however, he declared that on each occasion the transportation company was advised that McGuire Street was not "an accepted street." No such caveat, however, appears in the official resolutions.
Kaus acknowledged that Edison had received the following communication, dated May 21, 1963, from Woodbridge:
"WHEREAS, McGuire Street has served as a primary access road, and means of ingress and egress between the Menlo Park Terrace section of Woodbridge Township and the Menlo Park Shopping Center, and
WHEREAS, nearly 3,000 Woodbridge residents have used this road as a daily transportation road for nearly 8 years, and
WHEREAS, Public Service Transport Company [sic] has for approximately four years maintained a regularly scheduled bus route for residents in this area, and
WHEREAS, the Woodbridge Township Committee considers McGuire Street to be an important transportation artery and further that its use should remain unchanged,
NOW, THEREFORE, BE IT RESOLVED that the Woodbridge Township Committee requests that the Edison Council inform it of any attempt to change the status of the area presently known as McGuire Street."
A reply letter, written by the Edison Township Administrator, was then read into the record; it concluded with the statement, "The Township Council has no jurisdiction or interest in this road."
The closing of the McGuire Street extension did not landlock the development, since Menlo and Ford Avenues afforded a north-south access to Route 1, but there was some testimony with respect to traffic problems occasioned at the latter highway by the closing of the extension to Parsonage Road and the consequent diversion of traffic to Route 1.
The trial judge, in dismissing the complaint, rendered an oral opinion wherein he found, inter alia, that plaintiffs were in no sense landlocked; "there was no use or no activity by Edison Township which was inconsistent with the position *133 that this was a private road owned by the Sommers Brothers interest rather than a public road," and "It is difficult to see how there could be reasonable reliance upon such general or vague salestalk and upon a map * * *."
We are convinced, from our study of the record, that the proofs adduced by plaintiffs made out a prima facie case sufficient to withstand a motion for an involuntary dismissal of their complaint. See R.R. 4:42-2(b). As this court observed in Reiter v. Max Marx Color & Chemical Co., 67 N.J. Super. 410, 413 (App. Div. 1960), affirmed per curiam 35 N.J. 37 (1961), "on a motion for involuntary dismissal the trial court `must accept as true all the evidence that supports the position of the party against whom the motion is made, and it must give him the benefit of all the inferences in his favor that may logically and legitimately be drawn therefrom.' O'Donnell v. Asplundh Tree Expert Co., 13 N.J. 319, 328 (1953)." However, such inferences are to be drawn from established facts and they "cannot be based upon a foundation of pure conjecture, speculation, surmise, or guess." Rivera v. Columbus Cadet Corps of America, 59 N.J. Super. 445, 449 (App. Div.), certification denied 32 N.J. 349 (1960). See also Bell v. Eastern Beef Co., 42 N.J. 126, 129 (1964).
Plaintiffs do not contend that Sommers made an express dedication of the McGuire Street extension, or that Edison accepted a dedication by an appropriate ordinance or resolution of its governing body. The critical issues raised by the pleadings and proofs are: (1) whether the acts and conduct of Sommers manifested an intention to dedicate; (2) if so, was there an implied acceptance of the dedication by Edison, and (3) if there was an implied dedication but no municipal acceptance, what easement right, if any, inured to the benefit of plaintiffs. Reference to a few pertinent authorities may be helpful to bring the issues into proper focus.

I
The term "dedication" has been defined as "the permanent devotion of private property to a use that concerns the public *134 in its municipal character * * *." Black v. Central Railroad Co., 85 N.J.L. 197, 202 (E. & A. 1913). In this State there is but a single statutory provision for dedication, N.J.S.A. 40:153-34, which is not here relevant. Under common law principles, to which we look for guidance, dedications may be either express or implied. The former is ordinarily effected by a deed of grant or by a written or oral declaration of intention, while an implied dedication arises "from conduct of the dedicator which falls short of an express statement of intent to dedicate but which nevertheless manifests an intent to dedicate land to public use." Cunningham and Tischler, "Dedication of Land in New Jersey," 15 Rutgers L. Rev. 377, 384-385 (1961).
The dedication of private lands to public use being essentially a matter of intent, in assessing the quality thereof the court should concern itself not with intentions that remain unrevealed but with those evidenced "by the acts or conduct of the dedicator." Haven Homes v. Raritan Tp., 19 N.J. 239, 246 (1955). Although an acceptance of a dedication of the locus in quo is necessary prior to imposing responsibilities upon a municipality and vesting any present right of use in the public, a dedication is, nevertheless, complete and irrevocable as far as the landowner is concerned as soon as he has manifested an intent to devote the land to public use. See Trustees of M.E. Church of Hoboken v. Mayor and Common Council of City of Hoboken, 33 N.J.L. 13, 21-22 (Sup. Ct. 1868); Coleman House, Inc. v. City of Asbury Park, 129 N.J. Eq. 399, 401-402 (Ch. 1941), and Highway Holding Co. v. Yara Engineering Corp., 22 N.J. 119, 126 (1956).
Indeed, the dedication may never be accepted, but the power of acceptance continues indefinitely in the public authorities until such time as they reject or vacate the dedicated lands by official municipal legislative action. See Osterweil v. City of Newark, 116 N.J.L. 227, 230-231 (E. & A. 1936), and Highway Holding Co. v. Yara Engineering Corp., supra. A dedication may be "designed by the owner to be accepted by the public in praesenti or in futuro." Mayor, etc., *135 of Jersey City v. Morris Canal and Banking Co., 12 N.J. Eq. 547, 562-563 (E. & A. 1859), and the actual possession and dominion over the dedicated lands "may be suspended and lie dormant until such time as in the judgment of the proper local authorities the public exigencies require their possession and use," Lower Tp. v. Reeves, 14 N.J. Super. 180, 183 (Ch. Div. 1951). See also George Van Tassel's, etc., Inc. v. Town of Bloomfield, 8 N.J. Super. 524, 532 (Ch. Div. 1950).
It has been held that when a real estate developer plats a tract of land into building lots and prepares a map disclosing streets abutting such lots, if he conveys by reference to the map, and the purchaser relies thereon, an intent to dedicate may be assumed. See Clark v. City of Elizabeth, 40 N.J.L. 172, 174 (E. & A. 1878); Brindley v. Borough of Lavallette, 33 N.J. Super. 344, 351 (Law Div. 1954), and Pt. Pleasant Manor Building Co. v. Brown, 42 N.J. Super. 297, 304 (App. Div. 1956), certification denied 23 N.J. 140 (1957). But the prevailing rule in New Jersey is not uniformly followed in foreign jurisdictions. See 6 Thompson, Real Property (1962 replacement), § 3073, pp. 699-701; Note, "Public Ownership of Land Through Dedication," 75 Harv. L. Rev. 1406, 1409-1412 (1962).
According to the testimony adduced by plaintiffs, the maps exhibited in the developer's sales office, from which purchases were made, showed the road which they had traveled to reach the model house as an extension of McGuire Street over Sommers' holdings to Parsonage Road. Those maps are no longer in existence, but even on the filed plan, which relates only to lands in Woodbridge, nothing appears by way of a cul-de-sac or otherwise to expressly indicate that McGuire Street in Woodbridge was intended to deadend at the municipal boundary line.
The fact that land is used by the public for a period of time does not in itself indicate a dedication thereof by the owner. The public user of such land, however, is a significant element to be considered in connection with other facts in determining the existence of a dedication. See Cunningham *136 and Tischler, supra, 15 Rutgers L. Rev., at pp. 393-394. In a noteworthy discussion of this point in 4 Tiffany, Real Property (3d ed. 1939), c. 24, § 1102, pp. 339-340, the author opines:
"* * * the weight to be attributed to such acquiescence * * * [depends] on the length and character of the user, the nature of the place in which it occurs, the ability of the owner to prevent such user by the public without interfering with his own user of the land, as well as other circumstances. The theory is that if the public user has been openly as of right, and for so long a time that it must have come to the knowledge of the owner of the land, the owner's acquiescence therein may justify the inference that he intended that it be devoted to such use."
If the conduct of Sommers manifested an offer to dedicate the McGuire Street extension, when in the early stages of construction it was the only designated public right of way to Menlo Park Terrace and for upwards of ten years thereafter they acquiesced in its continued public use, the doctrine of equitable estoppel may preclude them from denying the dedication. When a landowner "so acts as to raise in others a well founded belief that he intends to donate to the public the easement, and such persons change their situation in consequence of such belief," he is estopped from denying, as against them, the intended dedication. Central R.R. ads. The State, 32 N.J.L. 220, 221-222 (Sup. Ct. 1867).
There is in this jurisdiction "no flat rule" as to the burden of proof plaintiffs must meet in order to establish the requisite intent and the actual dedication. We have "resisted attempts at an unjust simplicity." Pt. Pleasant Manor Building Co. v. Brown, supra, 42 N.J. Super., at p. 303. But see Atlantic City v. Groff, 68 N.J.L. 670, 672 (E. & A. 1903), wherein the court said the proofs must be "of a positive and unequivocal character," and the opinion in Osterweil v. City of Newark, supra, at pp. 229-230, which disapproved the statement that the proofs must be "strict, cogent and convincing" as found in Soper v. Conly, 108 N.J. Eq. 370, 380 (Ch. 1929), affirmed on other grounds 107 N.J. Eq. 537 *137 (E. & A. 1931). See generally, 11 McQuillin, Municipal Corporations (3d ed. 1964), §§ 33.38, 33.54, pp. 723-724, 775-776.
If by the totality of the circumstances "an issue is raised on which reasonable minds may differ, the question becomes one of fact to be resolved by the jury or the trier of the fact"; otherwise "the question whether or not there is a dedication is for the court." Pt. Pleasant Manor Building Co. v. Brown, supra, 42 N.J. Super., at p. 303. Furthermore, we adhere to the rule that doubts are generally "resolved against the dedicator and in favor of the public." Haven Homes v. Raritan Tp., supra, 19 N.J., at p. 246. Accord, Pt. Pleasant Manor Building Co. v. Brown, supra, 42 N.J. Super., at p. 304. Cf. Biglin v. Town of West Orange, 46 N.J. 367, 374 (1966).

II
The actions of a landowner manifesting his intent to dedicate land to a public use is sometimes referred to as an "offer of dedication" and, as we have seen, our decisions have held that such an offer is generally irrevocable by the dedicator, but the actual dedication is not consummated until there has been an acceptance. Mere passage of time will not ordinarily bar an acceptance unless the offer is expressly conditioned upon an acceptance within a limited time. There is a long line of cases, citations to which are unnecessary, to the effect that no particular formal acceptance of a dedication is required. There are, however, divergent views as to what conduct will be sufficient to constitute acceptance, "but the courts have been quick to resolve marginal cases in favor of the public." Note, supra, 75 Harv. L. Rev., at p. 1407.
Municipalities by appropriate ordinance or resolution may, and often do, formally accept an offer of dedication, see N.J.S.A. 40:67-1(b), but the acceptance may also be effectuated by other official conduct which manifests an intent to treat the land in question as dedicated to public use. Thus, an acceptance of dedicated lands may be found *138 "even though no action has been taken by the appropriate public authorities, if there has been `an actual enjoyment by the public of the use for such length of time that the public accommodation would be materially affected by a denial or interruption of enjoyment,' * * *." Cunningham and Tischler, supra, 15 Rutgers L. Rev., at p. 398. See N.Y. & L.B.R.R. Co. v. Borough of South Amboy, 57 N.J.L. 252, 258 (Sup. Ct. 1894), and Packer v. City of Woodbury, 3 N.J. Misc. 661, 663, 129 A. 406, 407 (Sup. Ct. 1925).
In George Van Tassel's, etc., Inc. v. Town of Bloomfield, supra, it was said:
"* * * Any formal action with relation to property dedicated to public use taken by the representatives of the public which can only be legally justified upon the theory that the land dedicated is presently subject to a public user, constitutes a formal acceptance of the dedication. Schmidt v. Spaeth, 86 N.J.L. 179 (E. & A. 1914); Morse v. Borough of Essex Fells, 121 N.J. Eq. 202 (Ch. 1936) and cases cited therein." (8 N.J. Super., at p. 530)
In a later case, where this court found that the acts of the township constituted an acceptance of a road as a public street, we declared that the intention to dedicate "will be drawn from acts done, even in the face of an express denial of such intention, where the township uses the property in a way which can only be justified legally upon the theory that the township has accepted the dedication." Sarty v. Millburn Tp., 28 N.J. Super. 199, 206 (App. Div. 1953). Our previous Court of Chancery observed, in Borough of Spring Lake v. Polak, 76 N.J. Eq. 212, 216 (Ch. 1909), reversed on other grounds 77 N.J. Eq. 557 (E. & A. 1910), that it "takes but little affirmative action to indicate an intention to accept a dedication." However, law enforcement activity such as policing a right of way "does not work a dedication." Public Service Railway Co. v. Weehawken Tp., 94 N.J. Eq. 88, 93 (Ch. 1922); cf. Robertson v. Meyer, 59 N.J. Eq. 366, 370 (Ch. 1900).
Our statutes provide that no "autobus" shall operate along any street in a municipality until the municipal organ "which *139 by law has control of the public streets therein for such operation" shall give its official consent. N.J.S.A. 48:4-3. Though Edison's granting of franchises for public transportation over the McGuire Street extension may not, standing alone, conclusively manifest an acceptance, that official action, if coupled with other circumstances of municipal acquiescence and dominion, would weigh heavily against a present disclaimer of acceptance.

III
When an acceptance has not taken place, but a dedication by implication exists, the individual purchaser of a lot abutting the right of way obtains by operation of law a private easement to the extent that he acquires a perpetual and indefeasible right of access to his lot over the dedicated street. Booraem v. North Hudson County R.R. Co., 40 N.J. Eq. 557, 564 (E. & A. 1885). At the least, this amounts to a right of passage "from his lot to the next adjoining public street on each side." Highway Holding Co. v. Yara Engineering Corp., supra, 22 N.J., at p. 128. See also Brindley v. Borough of Lavallette, supra, 33 N.J. Super., at p. 360. The court in Yara adopted as a yardstick the principle stated by Vice-Chancellor Pitney in Stevens v. Headley, 69 N.J. Eq. 533 (Ch. 1905), and said that "the implied grant of a private way in the street is confined to such use of the road or the street as is necessary for the beneficial enjoyment of the lot conveyed." 22 N.J., at p. 134.
Plaintiffs in the instant matter have access to Route 1 via Menlo and Ford Avenues. In Yara it was held that if abutting owners on a dedicated street were left "without any access whatsoever to a public street or highway, such owners may have an action for damages for the injury to their property and its appurtenances," but the mere inconvenience "arising from any increase in travel distance can hardly be regarded as an injury sufficiently substantial or serious to call upon a court to make any award in excess of what is popularly called nominal damages." 22 N.J., at pp. 135, 136. Accord, *140 Mueller v. N.J. Highway Authority, 59 N.J. Super. 583, 593-595 (App. Div. 1960). Whether Goldman or Edison contemplate in their planning any access roads from Menlo Park Terrace to Parsonage Road does not appear in the record.
Woodbridge and Edison were made parties defendant. The complaint was dismissed as to the former on its motion following plaintiffs' opening. We perceive no reason for disturbing that determination of the trial court. Plaintiffs proffered no proof as to fraud and punitive damages; the dismissal of their complaint as to those claims is affirmed. In all other respects the judgment is reversed and remanded for plenary hearing.
So ordered.