ANDREW, J.T.C.
This case involves the question of an exclusion from taxation pursuant to the Public Utilities Gross Receipts Tax Act, N.J. S.A. 54:30A-49 et seq., for water companies which do not use or occupy “public streets, highways, roads or other public places.” The narrow issue which must be decided by this court is whether the streets in the Cedar Glen Lakes residential community are “public streets” within the meaning of the act.
Plaintiff Cedar Glen Lakes Water Company is a New Jersey corporation which supplies water to residences in the Cedar Glen Lakes residential community. Cedar Glen Lakes Water Company is wholly owned by stockholders of Cedar Glen Lakes, Inc. and has its water mains only on and under the property owned by Cedar Glen Lakes, Inc.
Cedar Glen Lakes, Inc. is a senior citizens’ cooperative residential development which owns a 220-acre tract of land in Manchester Township, New Jersey. In addition to the land, Cedar Glen Lakes, Inc. also owns 1238 residential dwelling units, as well as all roadways, buildings and other improvements, located on the tract.
Those who wish to live in the community purchase a share of Cedar Glen Lakes, Inc. and are simultaneously given a share of Cedar Glen Lakes Water Company stock. Since there are a total of 1238 units in the development, there are a total of 1238 shares of stock each for Cedar Glen Lakes, Inc. and Cedar Glen Lakes Water Company.
The 1238 units are rented to the owners of Cedar Glen Lakes, Inc. stock pursuant to a use and occupancy agreement. This agreement identifies a particular residence by its unit number *236 established according to street location, and by its street address.
Before beginning construction, the original developers of Cedar Glen Lakes had submitted their development plans to Manchester Township for approval. These plans contained street layout maps which fixed the location of the improved streets within the development. Full approval of the developer’s plans by the township led to construction of streets pursuant to the plans and dwellings along those streets.
Additionally, a water franchise was granted by the township to Cedar Glen Lakes Water Company for the purpose of furnishing water to the development. This water is supplied from two wells located at pump house I and pump house II and is stored in a water-holding tank near pump house II. Water mains located under all of the streets connect the wells to the dwellings.
There are four major points of access to the development: Roosevelt City Road near the juncture with Route 70; Roosevelt City Road near the juncture with Route 539; New Jersey Way near the juncture with Route 70; and the New York Drive juncture with Route 539. Any of these entrances will provide access to all of the streets in the community. Roosevelt City Road was entirely a public road until the part inside Cedar Glen Lakes was vacated by Manchester Township prior to construction of the development.
. As Paul Hostelley, president of the board of directors for Cedar Glen Lakes Water Company and Cedar Glen Lakes, Inc. and resident of the development testified, at the four entrances to the community there are permanent signs which state: “No Through Traffic—Private Road For Residents and Guests of Cedar Glen Lakes Only.” However, there are no guards nor gates at any of the entrances, nor is there a regular check of vehicles entering the development. Since no record of resident-owned automobiles is kept, Hostelley conceded that it would be difficult to distinguish between a resident or guest and a member of the general public. Although trucks are generally *237 not allowed and drivers of such have been asked to leave on a number of occasions, a variety of types of vehicles are permitted in the development when their purpose is to perform a service for the community or its members. Among these are mail trucks, newspaper delivery trucks, general delivery trucks, and electrical service utility trucks from Jersey Central Power and Light Company. Additionally, Manchester Township police enter the community and perform various functions. Defendant alleges that the police patrol the streets. Apparently police activity in the community does not include enforcement of the motor vehicle laws but does encompass such things as a call for first aid or for a crime in progress. The roads in the development are maintained by Cedar Glen Lakes, Inc. The cooperative community does minor repairs of, removes snow from and cleans, the roads. Major repairs are usually done by an outside contractor at the request and expense of Cedar Glen Lakes, Inc.
Roosevelt City Road is closed for 24 hours one day each year. The general public is informed of this road closing by a notice published in several local newspapers. Although barricades are set up on the road at the two entrances on community property lines, they do not prevent residents and guests from entering due to the fact that they only partially block the road. Since the other two entrances located at New York Drive and New Jersey Way are not closed, and because guards are not posted at the Roosevelt City Road barricades, access to the community could be gained by the general public.
On December 1, 1977, the Board of Public Utilities decided that plaintiff was a public utility under its jurisdiction. The board, however, granted an exemption to plaintiff under N.J. S.A. 48:19-26 from certain public utility regulations.
Defendant notified plaintiff on April 30, 1982 that the following taxes were owed:
*238 Gross receipts tax—1982
(N.J.S.A. 54:30A-54(b)) $3,621.00
Excise tax
(N.J.S.A. 54:30A-54(c)(2))
1982 453.00
1983 (prepayment) 227.00
$4,301.00
Plaintiff paid these amounts and then filed a timely complaint for a refund in the Tax Court.
Plaintiff argues that it is not subject to public utility gross receipts or excise tax because the streets in the Cedar Glen Lakes development are not “open and used by the public” and thus are not “public streets” as defined by the act. In contrast, defendant contends that the streets are “public” within the meaning of the statute.
The design of the Public Utilities and Gross Receipts Tax Act may be found in N.J.S.A. 54:30A-49 as follows:
The purpose of this act is to provide a complete scheme and method for the taxation of street railway, traction, sewerage, water, gas and electric light, heat and power corporations using or occupying the public streets, highways, roads or other public places, to exempt from taxation other than imposed by this act the franchises, stock and certain property of such corporations and for the taxation of the property of such corporations not so exempted from taxation; the reimbursement to the State of certain costs and expenses incurred in the imposition and apportionment of such taxes; the apportionment of certain of such taxes among municipalities upon the fixed standards hereinafter set forth; and to supersede sections 54:31-1 to 54:32-7 of the Revised Statutes, inclusive, and chapter 8 of the laws of 1938 for the year 1940 and thereafter. [Emphasis supplied]
The act provides, under N.J.S.A. 54:30A-51, for taxes to be levied only on:
Street railway, traction, sewerage, water, gas and electric light, heat and power corporations using or occupying public streets, highways, roads or other public places, and their property and franchises____ [Emphasis supplied]
The actual amount of tax is found in N.J.S.A. 54:30A-54 as follows:
Every street railway, traction, sewerage, water, gas and electric light, heat and power corporation using or occupying the public streets, highways, roads, or other public places in this State shall, annually, pay excise taxes for the privilege of exercising its franchises and using the public streets, highways, roads or other public places in this State, as follows:
*239 (b) A tax at the rate of 7%% upon the gross receipts of such taxpayer for the preceding calendar year from its business over, on, in, through or from its lines or mains in the State of New Jersey.
(c) In addition to the excise taxes imposed in subsections (a) and (b) hereof, every taxpayer which is subject to the taxes imposed thereunder shall also pay to the State excise taxes for the franchise to operate and conduct business within the State and to use the public streets, highways, roads or other public places in the State as follows:
(2) A tax at the rate of 0.9375% upon the gross receipts of such taxpayer for the preceding calendar year from its business over, on, in, through or from its lines or mains in the State of New Jersey. [Emphasis supplied]
The phrase “public street, highway, road or other public place” as used in the act is defined in N.J.S.A. 54:30A-50(g) (hereinafter § 50(g)):
Public street, highway, road or other public place, includes any street, highway, road or other public place which is open and used by the public, even though the same has not been formally accepted as a public street, highway, road or other public place. [Emphasis supplied]
 The general principles of statutory construction establish the presumption that a tax assessment made by a proper authority is valid and place the burden of proof upon the taxpayer to show the invalidity of this presumption. Atlantic City Trans. Co. v. Taxation Div. Director, 12 N.J. 130, 146, 95 A.2d 895 (1953). However, an administrative agency may not extend a statute beyond its language to expand its effects, or to include persons not intended by the Legislature. Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 197 A.2d 673 (1964); Fedders Financial Corporation v. Taxation Div. Director, 96 N.J. 376, 385, 476 A.2d 741 (1984).
The issue here, narrowly framed by the parties, is whether the streets in the Cedar Glen Lakes development are “public streets,” i.e., “open and used by the public” within the meaning of § 50(g).
Plaintiff contends that, the streets in the Cedar Glen Lakes community are not public, therefore, it is not subject to the tax imposed. Initially, plaintiff relies upon Parsippany-Troy Hills *240 v. Bowman, 3 N.J. 97, 103-104, 69 A.2d 199 (1949) to demonstrate that there are three ways that a public highway may be established and that none of the methods described in that case were followed in this case; therefore, the streets cannot be considered public.
Plaintiff acknowledges that the Legislature has adopted a unique definition of “public street, highway, road or other public place” in § 50(g) and then asserts that the legislative intent to be gleaned from the definition was that although a completed dedication was not required to constitute a street “public,” an offer to dedicate, that is, an intent to dedicate, manifested by a dedicator either expressly or impliedly from conduct of the dedicator is required by the statutory definition.[1] Plaintiff then maintains that there is no evidence that indicates that plaintiff or its developer intended to dedicate the streets in the Cedar Glen Lakes community to public use. It supports this position by pointing to the fact that there are signs at each of the four entrances which reveal the private nature of the community. It is further urged that the action of the various residents in discouraging use by nonresidents, symbolically closing Roosevelt City Road one day each year and publishing a notice to that effect in several local newspapers, clearly shows the private nature of the roads and that there was never any intent to offer these streets for “general” public use.
*241 Defendant, on the other hand, argues that the streets in Cedar Glen Lakes are “public” because they are used by the residents and guests of residents of Cedar Glen Lakes who are members of the public and therefore their use alone is sufficient to constitute the use as “public.”
Defendant further maintains that even if the use of the community streets by residents and guests is not “public” within the meaning of § 50(g) that plaintiff has failed to overcome the presumption that his assessment is correct, Atlantic City Trans. Co. v. Taxation Div. Director, supra, 12 N.J. at 146, 95 A.2d 895, because it has failed to show that the streets in Cedar Glen Lakes are not “open and used by the public.” Specifically, defendant argues that the record demonstrates that there is use by the public at large in spite of the posted private signs and the yearly “closing” for a 24-hour period of Roosevelt City Road and that plaintiff has not succeeded in overcoming its burden of showing that the community streets are not “open and used by the public.”
Defendant additionally argues that although § 50(g) does not require an offer of dedication there is sufficient evidence in this case to demonstrate that an offer of dedication was made. Lastly, defendant contends that plaintiff has lost the right to exclude the general public from its streets by not exercising it and therefore the streets are open and used by the public at large.
For the reasons hereinafter stated I find defendant’s initial argument persuasive and because I am in agreement with that contention the other contentions set forth by the parties need not be addressed.
Defendant cogently argues that use by the residents and guests of the Cedar Glen Lakes community is sufficient, without more, to meet the definition of “public” street in § 50(g). In support of its position on this point defendant relied upon the fact that the Board of Public Utilities determined that plaintiff is a public utility pursuant to N.J.S.A. 48:2-13 and further upon the construction of the phrase “public use” in N.J.S.A. 48:2-13 *242 by our Supreme Court in Lewandowski v. Brookwood Musconetcong River Ass’n., 37 N.J. 433, 181 A.2d 506 (1962). N.J.S.A. 48:2-13 states that the jurisdiction of the Board of Public Utilities extends to every water corporation:
... that now or hereafter may own, operate, manage or control within this State ... any water ... plant or equipment for public use, under privileges granted ... by this State____ [Emphasis supplied]
From this defendant argues that since plaintiff operates its facilities solely for the residents and guests of the Cedar Glen Lakes community and since such use constitutes “public use” for the purposes of N.J.S.A. 48:2-13, the residents and guests of Cedar Glen Lakes also constitute a sufficient segment of the public at large to be considered the “public” for purposes of § 50(g). Defendant recites that this conclusion is implicit in the determination by the Board of Public Utilities on December 1, 1977 that plaintiff in “serving the members of Cedar Glen Lakes, Inc., a senior citizens cooperative, is a public utility subject to the jurisdiction of the Board of Public Utilities.”
Presumably realizing that this court is not bound by a determination by the Board of Public Utilities in its interpretation of the statutory phrase “public use” in N.J.S.A. 48:2-13, defendant notes that the board’s conclusion that plaintiff meets the statutory definition of a public utility was clearly shown in Lewandowski v. Brookwood Musconetcong River Ass’n., supra. In Lewandowski a developer acquired a tract of land and thereafter filed a subdivision map delineating approximately 1,000 lots along with paper streets. The developer’s purpose was to sell the lots to individuals who would erect single-family dwellings. As part of a plan to assist in the sale of lots the developer organized a nonprofit association, the membership of which was essentially the developer and the owners of lots purchased from the developer. The developer then contracted with the association to construct and install a water supply system. It was the association’s obligation to pay for the construction, installation and maintenance of the system. Lot owners at the time of purchase were required to become members of the association and abide by its bylaws which gave *243 the association the right to set the rates for the water service provided to the individual lot owners.
The lot owners complained to the Board of Public Utilities that the rates set by the association were excessive and asked the board to assume jurisdiction over the association and require it to set reasonable rates for water service. The association argued that it was not subject to the board’s jurisdiction because the water system was not “for public use” since the association had not attempted to serve the public at large but limited its water service solely to a group of lot owners who had organized for their own benefit. Therefore, the association could not be a public utility under N.J.S.A. 48:2-13.
In rejecting this argument our Supreme Court indicated that whether a water system is operated for “public use” depends on the character and extent of the use. Although the Court found that the association had no obligation to supply water to the “general” public or any specific portion thereof this was immaterial in light of the fact that water was being supplied to a broad group of consumers. Id. at 445, 181 A. 2d 506. The ultimate holding of the Court was that the water system was operated for “public use.” In coming to its conclusion the Court relied on the following factors. The association had created a water system that was for the benefit of the prospective purchasers of lots in the development. The developer’s sales campaign was directed to the public at large and as an incentive to a potential purchaser the association represented that water service would be provided. One could not buy a lot without becoming a member of the association. Id. at 446, 181 A. 2d 506. At the hearing before the Board of Public Utilities approximately 400 lots had been sold, there remaining some 600 lots to be sold. The court came to its ultimate conclusion using the following language:
An undertaking of this size cannot be classified as a project merely among neighbors and colored by any private cast which might attach to such a group. The character of the use is clear, i.e., to serve all members of the public who buy lots from the developer. The extent of the use is equally clear, i.e., an entire housing development is dependent upon the Association for a prime necessity of life. As the character and extent of the use make it public, one *244 concludes the Association is operating a water system “for public use” within the meaning of N.J.S.A. 48:2-13. [/d at 446-447, 181 A.2d 506; emphasis supplied]
While there may be minor differences between the development in Lewandowski and the cooperative development in this case the significant aspects are the same and lead to the conclusion that the character and extent of the use of the streets by the residents and guests of residents of the Cedar Glen Lakes community constitutes the streets as “public” within the meaning of § 50(g). In this case the developer who organized and constructed the development also constructed and installed the water supply system. Those who wish to live in the Cedar Glen Lakes community purchase a share of the cooperative and are simultaneously given a share of the water company. The developer’s sales campaign was directed to the general public and the purchasers remain members of the public after assuming residence in the cooperative community. There are 1238 residential dwelling units sited on a 220-acre tract of land.
Plaintiff does not address defendant’s contention that the character and extent of use by the residents and guests, alone, constitutes “public use” of the streets in the community within the meaning of § 50(g). This court has been unable to discover any sound reason why the Lewandowski analysis cannot be appropriately utilized in this case. The Lewandowski construction of “public use” was in the context of a proceeding to determine whether a water system was a public utility within the jurisdiction of the Board of Public Utilities while this proceeding involves the determination of what the word “public” means in the context of the Public Utility Gross Receipts Tax Act. There does not appear to be any basis nor has plaintiff offered any to support differing or inconsistent meanings of the word “public” in the two enactments that deal with the same subject matter, viz., the concept of “public use” involving a public utility. Absent such, defendant’s determination must be affirmed.
*245 There is nothing in the language used in § 50(g) that supports plaintiffs contention that the Legislature intended that there be an offer of dedication to the public at large before the streets in the Cedar Glen Lakes community could be considered “open and used by the public.” As defendant points out, the focus of § 50(g) is not on the conduct of the property owner which is requisite to a determination of an offer of dedication, but rather upon whether the streets are “open and used by the public.” As defendant further notes, there may be an offer of dedication without public use yet § 50(g) requires public use. The statutory language therefore does not indicate that “open and public use” is directly equivalent to an offer of dedication under common law principles. The Legislature is fully familiar with the language of dedication[2] yet it has chosen not to couch its definition of a public street in explicit dedication, or offer of dedication, language.
I find under all the facts of this case, that the streets within the Cedar Glen Lakes community are public streets within the meaning of § 50(g) in that they are “open and used by the public.” As a result plaintiff is subject to the taxes as assessed by defendant.
Judgment shall be entered by the Clerk of the Tax Court affirming the assessment of defendant, Director, Division of Taxation.

 Dedication has been defined as the "permanent devotion of private property to a use that concerns the public in its municipal character." Velasco v. Goldman Builders, Inc., 93 N.J.Super. 123, 133-134, 225 A.2d 148 (App.Div.1966). Actual dedication consists of two elements: an offer of dedication and acceptance by the municipality. Id. at 137, 225 A.2d 148. An offer of dedication under common law principles can be either express or implied. Id. at 134, 225 A.2d 148. The express offer is normally effected by a written or oral declaration of intention while an implied offer arises from conduct manifesting an intent to dedicate land to a public use. Ibid.; Cunningham and Tischler, “Dedication of Land in New Jersey,” 15 Rutgers L.Rev. 377, 384-385 (1961). In this State an offer to dedicate land to a public use is generally considered to be irrevocable by the dedicator once made. Velasco v. Goldman Builders, Inc., supra at 134, 225 A.2d 148.

 L.1893, c. 34, § 6, codified at N.J.S.A. 40:153-34 provides as follows:
If any person shall desire to dedicate to public use as a highway any portion of his real estate, and twelve freeholders of the district in which said real estate is situated shall petition the board to accept the same for public use, then upon the grading and improvement of the same as a highway and the execution of a deed of the same to the inhabitants of said township, with an acceptance in writing signed by a majority of said road board indorsed thereon and recorded with the same in the office of the clerk of the county wherein said township is located, the real estate so dedicated and accepted shall be a public highway from the time of recording such deed as if the same had been opened under the provisions of any existing law. [Emphasis supplied]